Filed 4/20/16  In re C.C. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re C.C., A Person Coming Under the Juvenile Court Law. | |
| | D069319 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Plaintiff and Respondent, | (Super. Ct. No. SJ13176) |
| v. | |
| AMBER C., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Kenneth J. Medel, Judge.  Appeal dismissed.

Neil R. Trop, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel, and Lisa Maldonado, Deputy County Counsel, for Plaintiff and Respondent.

Amber C. appeals from an order of the juvenile court making jurisdictional findings on a juvenile dependency petition filed by the San Diego Health and Human Services Agency (the Agency) on behalf of her minor son, C.C. (born 2012). Amber contends substantial evidence did not support the juvenile court's true finding on the petition. The Agency requests that we take judicial notice of a subsequent order placing C.C. in Amber's care and terminating jurisdiction. The Agency contends this order renders the appeal moot. We agree with the Agency and dismiss the appeal as moot.

FACTUAL AND PROCEDURAL BACKGROUND

Amber gave birth to C.C. while married to Marcus N. They later divorced. Amber married Joshua S. in 2014. In November 2014, the couple had an argument where Joshua grabbed Amber's cell phone and told her that he " 'had a gun with her name on it.' " He also pulled a gun on her and cocked it (the first incident). Amber called 911 and the police took Joshua's guns. Amber obtained a temporary restraining order (TRO), but the order was dismissed in December 2014.

In January 2015, Amber considered reconciling with Joshua.[1] In March, Joshua was convicted through the Navy for the first incident and placed in a military jail. At that time, Amber considered the relationship over, and she filed for a divorce. In June, Joshua was released from military jail. Amber began allowing Joshua into her home, but she eventually kicked him out over infidelity concerns. On June 27, Joshua broke into the home, punched through a door to gain entry into Amber's bedroom and choked her while

---

[1] All further date references are to the year 2015 unless otherwise specified.

C.C. slept next to her. When Joshua finally let Amber go, he stated the he had "nothing to lose" and would "kill" her (the second incident). The following day, Amber called the police. Joshua was later arrested and taken into military custody, but he escaped and fled to Mexico.

A few days later, Amber agreed to a safety plan which required that she not take C.C. back to the home she had shared with Joshua (the shared home). Amber obtained another TRO, but was never able to serve Joshua. The Agency filed a petition under subdivision (b) of Welfare and Institutions Code section 300 alleging a substantial risk existed that C.C. will suffer serious physical harm based on the two incidents and Amber's subsequent return to the shared home with C.C. in violation of the safety plan. At the detention hearing in August, the juvenile court made a prima facie finding and detained C.C. in licensed foster care. The Agency later moved C.C. to the home of a nonrelative extended family member.

At the contested jurisdiction hearing in November, the juvenile court heard testimony from the social worker, Amber, and Amber's father. The juvenile court found the petition allegations true, finding that a continued substantial risk existed that needed to be addressed based on Amber making choices that placed herself and C.C. in a vulnerable position to be exposed to domestic violence. Amber timely appealed from the jurisdictional order.

## DISCUSSION

The Agency requests that we take judicial notice of a March 2016 addendum report and a March 2016 order. The report indicated that in December, Amber and C.C.

3

moved to Washington state to reside with her parents. The social worker reported that in January 2016, Amber was working full time, the maternal grandparents assisted with C.C.'s care and C.C. appeared to be well cared for. In March 2016, the juvenile court placed C.C. with Amber and terminated jurisdiction.

Based on these subsequent events, the Agency requests that the appeal be dismissed as moot because the juvenile court has already ordered the relief Amber sought. Amber opposes the requests. She asserts the motion for judicial notice should be denied because the new information is not relevant to whether the juvenile court erred in assuming jurisdiction. She argues the appeal should not be dismissed because the true finding could result in future detriment.

"[D]ependency counsel have a duty to bring to the appellate court's attention post-appellate rulings by the juvenile court that affect whether the appellate court can or should proceed to the merits." (*In re N.S.* (2016) 245 Cal.App.4th 53, 57.) Because the post-appellate ruling by the juvenile court affects the merits of this appeal, the Agency's request for judicial notice is granted. (Evid. Code, §§ 452, subd. (d), 459.)

" '[A]n action that originally was based on a justiciable controversy cannot be maintained on appeal if all the questions have become moot by subsequent acts or events. A reversal in such a case would be without practical effect, and the appeal will therefore be dismissed.' " (*In re Dani R.* (2001) 89 Cal.App.4th 402, 404.) Generally, "an order terminating juvenile court jurisdiction renders an appeal from a previous order in the dependency proceedings moot." (*In re C.C.* (2009) 172 Cal.App.4th 1481, 1488.) Dismissal for mootness " 'must be decided on a case-by-case basis.' " (*Ibid.*)

4

Here, the only issue in this appeal is whether C.C. should be subject to the court's dependency jurisdiction. Amber sought reversal of the juvenile court's jurisdictional finding and dismissal of the action. The juvenile court has since placed C.C. with Amber and terminated its jurisdiction. Accordingly, proceeding to the merits of this appeal serves no useful purpose as its outcome could provide Amber with no practical relief.

To avoid dismissal of the appeal Amber contends that allowing the jurisdictional finding to stand could be detrimental in a future family court proceeding regarding custody or visitation. She also contends the finding could impede her pursuit of employment or vocational licensure, particularly with regard to jobs involving interaction with children.

The order terminating jurisdiction noted that Amber and Marcus had agreed upon unsupervised visitation for Marcus, with the juvenile court referring the parents to a family court facilitator in Washington state. We conclude any impact the jurisdictional finding might have on a future family law proceeding is highly speculative as the family court will be advised of the outcome of this dependency proceeding and will be required to evaluate any changes to custody or visitation based on the parent's current circumstances.

Amber's contention that the jurisdictional finding could impact possible future employment or vocational licensure is similarly speculative. The case file in a dependency proceeding is confidential and cannot be disseminated to the public. (Welf. & Inst. Code, § 827.) The Child Abuse and Neglect Reporting Act (CANRA, Pen. Code, § 11164 et seq.) creates a procedure for reporting acts of child abuse and neglect in order

5

to protect children. The CANRA mandates that instances of child abuse be reported and investigated, and that the identity of individuals whose abuse of a child has been substantiated be made available to law enforcement, social services, and other such agencies who might be called upon to approve or disapprove an abuser's future request for guardianship, adoption, or employment involving children. (Pen. Code, §§ 11164-11174.3.)

Under the CANRA, any agency reporting suspected child abuse must notify the known or suspected child abuser in writing that he or she has been reported to the Child Abuse Central Index (CACI). (Pen. Code, § 11169, subd. (c).) Amber does not assert that she received notification that she has been reported to the CACI. Moreover, the duty to report suspected child abuse is triggered by an investigator determining that it is more likely than not that child abuse or neglect occurred, not by the sustaining of a Welfare and Institutions Code section 300 petition. (Pen. Code, § 11169, subd. (a); see Pen. Code, § 11165.12, subd. (b) [a "substantiated report" of child abuse or neglect is one based upon evidence the investigator believes makes it more likely than not child abuse occurred].) Stated differently, the juvenile court's jurisdictional true finding is irrelevant to the issue of whether Amber could be reported to the CACI.

Amber's appeal from the jurisdictional order is dismissed as moot because C.C. has been returned to Amber's physical custody and the juvenile court has terminated its jurisdiction.

DISPOSITION

The appeal is dismissed.


NARES, Acting P. J.

WE CONCUR:


HALLER, J.


IRION, J.