Filed 2/24/16

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re N.S., a Person Coming Under the Juvenile Court Law. | |
| ALAMEDA COUNTY SOCIAL SERVICES AGENCY, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> A.A., <br><br> Defendant and Appellant. | A145473 <br><br> (Alameda County Super. Ct. No. SJ15024675-01) |

N.S., the infant daughter of appellant A.A. (Mother), was taken from her parents after they were arrested on charges relating to a marijuana-grow house where they were reported to be living with the newborn. Mother took immediate steps to move out of the house, and by the time of the contested jurisdictional hearing it was empty and listed for sale. The juvenile court nonetheless took jurisdiction under Welfare and Institutions Code section 300, subdivisions (b) and (g).[1] While Mother's appeal challenging the jurisdictional findings was pending, the juvenile court awarded Mother custody of N.S. and dismissed the dependency proceedings. We agree with respondent Alameda County Social Services Agency (Agency) that dismissal of the appeal is proper under these circumstances.

---

[1] All statutory references are to the Welfare and Institutions Code unless otherwise specified.

1

# I.
## FACTUAL AND PROCEDURAL
## BACKGROUND

In August 2014, when Mother was about one-month pregnant, she and N.S.'s father were arrested for illegally growing and possessing marijuana for sale in their Hayward home. Eight months later, about two weeks after N.S. was born, Mother and the baby's father were again arrested for possessing marijuana for sale in their home.

Shortly after the second arrest, the Agency filed a dependency petition alleging that N.S. faced a substantial risk of harm (§ 300, subd. (b)) and had been left by her father without any provision for support (§ 300, subd. (g)).[2] The petition alleged that the family was found "living in a marijuana grow house," where the infant was exposed to dangerous chemicals and a fire hazard from illegal wiring. N.S. was ordered detained and placed with a maternal relative who lived in the upper unit of a two-unit building in Union City.

Mother moved into the lower unit of the building to live with her father. Visits between Mother and N.S. went well, and Mother eventually was permitted to have unsupervised visits twice a day. Mother enrolled in and regularly attended a support group for new mothers, participated in individual therapy, repeatedly tested negative for drugs, had no contact with N.S.'s father, and completely moved out of the Hayward home and listed it for sale. N.S. had no medical issues and was not alleged to have suffered any physical harm while in her parents' care.

The Agency repeatedly praised Mother for her care of N.S. and the positive steps she had taken following the initiation of dependency proceedings, but it nonetheless recommended that the juvenile court take jurisdiction because Mother had been arrested twice for similar and serious charges. One reason the Agency made its recommendation was because it wanted to monitor Mother's possible involvement in further criminal activities.

---

[2] The Agency had trouble contacting N.S.'s alleged father, and it appears that he did not participate in proceedings in the juvenile court. He likewise is not a party to this appeal.

2

After a contested jurisdiction/disposition hearing on June 12, 2015, the juvenile court sustained the dependency petition, which was amended slightly to conform to proof. The court concluded that there was a current risk of harm to N.S. based on Mother's past behavior. It adjudged N.S. as a dependent of the juvenile court, placed N.S. with Mother, and ordered the Agency to provide family-maintenance services.

Mother appealed. But while the appeal was pending, the juvenile court entered an order in November 2015 dismissing dependency jurisdiction, awarding custody of N.S. to Mother, and ordering supervised visits with N.S.'s father. We requested and received supplemental briefing on whether the dismissal renders the appeal moot.

II.
DISCUSSION

A. *This Court Should Be Notified of Post-appeal Juvenile Court Rulings that Affect the Court's Ability to Grant Effective Relief.*

We learned of the juvenile court's November 2015 dismissal from a notice submitted by Mother's counsel. In considering the notice, we discovered possible confusion among dependency practitioners about the obligation to inform the Court of Appeal, First Appellate District, of subsequent juvenile-court rulings in ongoing dependency proceedings. We further discovered that this confusion may have arisen from written direction given by a former clerk of this court decades ago.

As Mother's counsel appreciated, dependency counsel have a duty to bring to the appellate court's attention post-appellate rulings by the juvenile court that affect whether the appellate court can or should proceed to the merits. (See, e.g., *In re Josiah Z.* (2005) 36 Cal.4th 664, 676 [appellate courts routinely consider limited postjudgment evidence in connection with motions to dismiss].) Because the November 2015 dismissal affects this court's ability to grant effective relief, Mother's counsel acted properly in informing us about it.

Mother's notice stated that it was submitted in accordance with directives of a 1992 "order" from this court. As evidence of the order, Mother later provided us with a copy of a letter, dated February 6, 1992, that was sent from Ron Barrow, former Clerk of

3

the First District Court of Appeal, to dependency practitioners. The letter directs dependency counsel to inform the court of the "results and effect of any status review hearings conducted by the juvenile court . . . while the appeal is pending." Although the letter is worded as though it applied to a single case, the letter has apparently been used to suggest a district-wide expectation. A treatise reports that the letter is "routinely issue[d]" to counsel in dependency appeals. (Abbott et al., Cal. Juvenile Dependency Practice (Cont.Ed.Bar. 2015) Inadequacy of Appellate Remedy; Writ Relief, § 10.3, p. 828.) The letter is no longer disseminated to dependency counsel by the clerk of this court even if it may have been at one time. Still, we are informed that the First District Appellate Project distributes copies of it to the attorneys to whom it assigns dependency cases.

The letter's directives are not binding. To begin with, whatever the court's expectations from dependency counsel may have been in 1992, the letter is not part of the court's current local rules or practices and procedures. More importantly, the letter does not reflect current law. As explained by the California Supreme Court in *In re Zeth S.* (2003) 31 Cal.4th 396, " 'an appeal reviews the correctness of a judgment as of the time of its rendition, *upon a record of matters which were before the trial court for its consideration.*' " (*Id.* at p. 405, italics added.) Consideration of postjudgment evidence in dependency appeals violates generally applicable rules of appellate procedure as well as the specific statutes that govern termination of parental rights, and is contrary to the strong interest in finality of juvenile-dependency proceedings. (*Id.* at pp. 409-410, 413.) Informing the court of the results and effect of all status-review hearings conducted by the juvenile court during the pendency of an appeal from an earlier ruling, as contemplated by the 1992 letter, without an evaluation of what practical effect such rulings might have on the appeal, could lead to a waste of court resources. (E.g., *In re Savannah M.* (2005) 131 Cal.App.4th 1387, 1399 [granting mother's motion to strike reference to post-appeal change in minors' placement].)

To be clear, parties in dependency appeals *are* expected to forward post-appeal rulings by the juvenile court when they affect the appellate court's ability to grant

4

effective relief or may play a proper role in the consideration of the appeal's merits. But they should evaluate the practical effect of a subsequent ruling to determine whether this standard is satisfied and then notify us, as Mother in this case did, only when it is.

    *B.  We Decline to Exercise Our Discretion to Review the Juvenile Court's Jurisdictional Findings in Light of the Dismissal of the Underlying Proceedings.*

We next turn to what effect the November 2015 dismissal has on Mother's appeal. As a general rule, it is a court's duty to decide " ' "actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it." ' " (*Eye Dog Foundation v. State Board of Guide Dogs for the Blind* (1967) 67 Cal.2d 536, 541.) An appellate court will dismiss an appeal when an event occurs that renders it impossible for the court to grant effective relief. (*Ibid.*) Still, a court may exercise its inherent discretion to resolve an issue when there remain "material questions for the court's determination" (*ibid.*), where a "pending case poses an issue of broad public interest that is likely to recur" (*In re William M.* (1970) 3 Cal.3d 16, 23), or where "there is a likelihood of recurrence of the controversy between the same parties or others." (*Grier v. Alameda-Contra Costa Transit Dist.* (1976) 55 Cal.App.3d 325, 330.)

Juvenile-dependency appeals raise unique mootness concerns because the parties have multiple opportunities to appeal orders even as the proceedings in the juvenile court proceed. (E.g., *In re James F.* (2008) 42 Cal.4th 901, 915 [unlike proceedings where contested issues involve historical facts, dependency proceedings usually involve ongoing evaluations of parents' present willingness and ability to provide appropriate care for their children].)

In considering whether a dependency appeal is moot, some appellate courts continue to rely on *In re Kristin B.* (1986) 187 Cal.App.3d 596, a decades-old case decided before dependency proceedings were unified. (E.g., *In re Marquis H.* (2013) 212 Cal.App.4th 718, 724; *In re J.K.* (2009) 174 Cal.App.4th 1426, 1432.) *Kristin B.* was

5

decided under former Civil Code section 232, which set up proceedings for termination of parental rights that were "separate and distinct" from dependency actions under section 300. (*Kristin B.*, at p. 604.) Proceedings under former section 232 did not function as a review of dependency actions, and independent findings were made in them. (*In re Jasmon O.* (1994) 8 Cal.4th 398, 411-414.) In *Kristin B.*, the parents appealed from a juvenile court's order finding their children to be adoptable and ordering the initiation of separate termination proceedings under section 232. They later appealed from a subsequent order in the separate termination proceedings that severed their parental rights. (*Kristin B.*, at pp. 600, 602-603.) In considering whether the parents' three appellate arguments in their consolidated appeal were moot, the court considered the interrelationship of dependency actions with separate proceedings to terminate parental rights. (*Id.* at pp. 603, 605.) It concluded that "an earlier appeal arising out of a [separate] juvenile court dependency proceeding is not moot *if* the purported error is of such magnitude as to infect the outcome of the ensuing [and, again, separate] termination action *or* where the alleged defect undermines the juvenile court's initial jurisdictional finding [in the previous and separate proceeding]." (*Id.* at p. 605, original italics.) This passage, however, is not plainly applicable to the mootness of dependency appeals under the *current* statutory scheme in which proceedings are unified.

In any event, the critical factor in considering whether a dependency appeal is moot is whether the appellate court can provide any effective relief if it finds reversible error. This standard was relied upon more than two decades ago in a case from Division Five of this court that dismissed an earlier appeal in light of a subsequent dismissal by the juvenile court of the dependency action. (*In re Michelle M.* (1992) 8 Cal.App.4th 326, 328-329 (*Michelle M.*).) The procedural posture in that case was similar to the posture here. There, the father appealed jurisdictional and dispositional orders finding his children to be dependents of the juvenile court. (*Id.* at pp. 327-328.) During the pendency of the appeal, the juvenile court terminated its jurisdiction. (*Id.* at p. 328.) The juvenile court also transferred its custody-and-visitation order, which prohibited contact between the father and his children except under certain circumstances, to the superior

6

court under section 362.4. (*Michelle M.*, at p. 328.) That statute provides that a juvenile court's order terminating jurisdiction may be used as the sole basis for opening a separate file in the superior court when there is no current action pending relating to the minor's custody. (See *ibid.*) Over the father's objection, Division Five dismissed the appeal from the jurisdictional findings, concluding that there was no longer effective relief that could be granted because "the juvenile court no longer has jurisdiction and we are only reviewing that court's ruling," as opposed to the subsequent ruling dismissing jurisdiction and transferring the matter to the superior court. (*Id.* at p. 330.)[3]

In *In re Joshua C.* (1994) 24 Cal.App.4th 1544, 1546-1547 (*Joshua C.*) the court similarly focused on whether it could grant any effective relief in deciding whether an appeal from earlier jurisdictional findings was moot in light of a dismissal of the dependency proceedings. In that case, the juvenile court sustained a dependency petition finding that a father sexually abused his daughter, awarded sole physical and legal custody of the girl and her twin brother to the mother (with whom the minors had been living throughout the dependency proceedings), and terminated dependency jurisdiction. The appellate court held that it could consider the father's appeal from the jurisdictional findings, notwithstanding the termination of dependency proceedings, because those findings were the basis for restrictive visitation and custody orders that continued to negatively affect the father. (*Id.* at p. 1548.) "If the jurisdictional basis for orders restricting appellant's visitation with, and custody of, [appellant's son] is found by direct appeal to be faulty, the orders would be invalid." (*Ibid.*; see also *In re J.K.*, *supra*, 174 Cal.App.4th at pp. 1431-1432 [juvenile court's dismissal did not render appeal moot where sustained jurisdictional findings had an adverse effect on his custody rights, and

---

[3] Although we agree with *Michelle M.*'s disposition and focus on whether effective relief could be granted, we disagree with its determination that the appellate court lost *jurisdiction* to consider the appeal when the juvenile court terminated its jurisdiction. (*Michelle M.*, *supra,* 8 Cal.App.4th at p. 329.) As we have mentioned, an appellate court may exercise its discretion to resolve an issue even when effective relief cannot be given to the parties in some circumstances, such as when there is an issue of broad public interest that is likely to recur, there is a likelihood that the controversy will recur, or material questions remain for the court's determination.

court-imposed stay-away order would remain in effect against him after dismissal]; *In re Hirenia C.* (1993) 18 Cal.App.4th 504, 517 [where an issue raised in a notice of appeal in a dependency case continues to affect the rights of the child or parents, appeal not necessarily rendered moot by dismissal of underlying dependency proceedings].)

Here, unlike in *Joshua C.*, no effective relief can be granted. Mother has been awarded custody of N.S., and the jurisdictional findings are not the basis of any current order that is adverse to her. In contending that her appeal is not moot, Mother relies on a comment in *Michelle M.*, *supra*, 8 Cal.App.4th at page 330, that the father's remedy in that case "was to attack the juvenile court's order terminating jurisdiction in order to raise the issues he urges before us." Mother argues that *Michelle M.*'s holding that dismissal of an underlying dependency proceeding moots an earlier appeal from jurisdictional findings is inapplicable to her because she, unlike the father in *Michelle M.*, appealed from the dismissal order.[4] But the point is not whether an appeal is taken from the dismissal order; the point is whether there is any effective relief that can be provided. In *Michelle M.*, there was, but here there is not. Unlike the dismissal order in *Michelle M.* that was unfavorable to the father, the dismissal order here was *favorable* to Mother and does not form the basis of any adverse custody ruling. (*Id.* at pp. 328, 330.) Mother thus has no reason to challenge the dismissal order and there is no relief to provide her either in her appeal from the jurisdictional findings or in an appeal of the favorable dismissal order.

Mother lastly relies on *Joshua C.*, *supra*, 24 Cal.App.4th 1544, in arguing that this court should review the juvenile court's jurisdictional findings because possibly erroneous findings will otherwise be left unexamined. Her reliance is misplaced. It is

---

[4] It appears that Mother did not perfect an appeal from the juvenile court's dismissal order. True enough, she submitted to this court a copy of a notice of appeal from the dismissal order. The notice has been file stamped as "received"—but not *filed*—by the clerk of the Alameda County Superior Court, and the county counsel's office noted in its supplemental brief that it had no record of an appeal having been filed. On its own motion, the court requested from the juvenile court a docket sheet, which likewise does not show an appeal having been filed, and this court has not received one. We take judicial notice of the docket sheet, the dismissal order, and Mother's notice of appeal.

true that *Joshua C.* noted that leaving the alleged jurisdictional errors unaddressed on appeal could have "the undesirable result of insulating erroneous or arbitrary rulings from review." (*Id.* at p. 1548.) But, unlike here, the jurisdictional findings in *Joshua C.* were the foundation for visitation-and-custody orders that remained in effect.

Some courts have relied on *Joshua C.*'s language in declining to dismiss appeals from juvenile-court orders entered prior to the dismissal of dependency proceedings even though the parents made no showing that the challenged orders adversely affected them in light of the dismissal. (E.g., *In re Daisy H.* (2011) 192 Cal.App.4th 713, 716 [appeal not dismissed even though underlying proceedings dismissed and father awarded joint custody under mediation agreement, because jurisdictional findings "could have severe and unfair," yet unspecified, consequences]; *In re C.C.* (2009) 172 Cal.App.4th 1481, 1488-1489 [juvenile court terminated jurisdiction during pendency of appeal and awarded mother "the very relief" she sought in her appeal; although mother's concern about possible detriment in future proceedings "highly speculative," appellate court reviewed visitation order "in an abundance of caution"].)

We see no reason to review the juvenile court's jurisdictional findings here on the basis of such speculation or caution. We are sympathetic to Mother's argument that dismissing this appeal will insulate from review the jurisdictional findings that were arguably entered after excessive weight was given to past conduct and insufficient weight was given to the circumstances existing at the time of the jurisdictional hearing. (Cf. *In re Kadence P.* (2015) 241 Cal.App.4th 1376, 1383-1384 [evidence of substantial risk must be established as of time of jurisdictional hearing]; *In re Savannah M.*, *supra*, 131 Cal.App.4th at p. 1396 [substantial evidence must support juvenile court's determination that facts existed *at time of hearing* to support taking jurisdiction]; *In re Rocco M.* (1991) 1 Cal.App.4th 814, 824 [court looks to whether circumstances at the time of jurisdictional hearing subject minor to current risk of harm]; *In re Katrina C.* (1988) 201 Cal.App.3d 540, 546 [present-tense verb in dependency statute indicates that unfitness must exist *at the time of the hearing*]; *In re James B.* (1986) 184 Cal.App.3d 524, 529 [juvenile court should look to circumstances as of time of jurisdictional hearing]; see also §§ 355,

9

subd. (a) [at jurisdictional hearing, court shall consider question of whether minor is person described by section 300], 300.2 [purpose of dependency statutes is to protect children "who are *currently* being" abused or neglected and to ensure the safety and protection of children "who *are* at risk of that harm"], italics added.)  And we understand the desire of parents to challenge negative findings made about their parenting in dependency proceedings even when they are ultimately able to regain custody of their children.

But even if we were to conclude that the juvenile court's jurisdictional findings erroneously resolved a close call, there remains no effective relief we could give Mother beyond that which she has already obtained.  We are mindful that parents of young children face the prospect of possible future juvenile-court intervention.  One commentator has observed that "[b]ecause the court's jurisdictional findings could have negative consequences for the parent in collateral proceedings, it can be argued that a parent's appeal challenging those findings is not moot.  Although juvenile proceedings are confidential in nature, the jurisdictional facts might be disclosed by a social worker in a future petition or might be disclosed in the client's future application for a foster license."  (Abbott et al., Cal. Juvenile Dependency Practice, *supra*, Existence of Continuing Controversy, § 10.40, p. 861.)  We are unconvinced, however, that any ruling we could issue here would have any practical effect on future dependency proceedings.  Mother acknowledges, and we agree, that substantial evidence supports the allegations of the dependency petition in that the evidence showed that Mother and N.S.'s father were arrested twice in connection with activity at a home that was a marijuana-grow house and where unsafe chemicals and wiring were found.  Those facts would almost certainly be available in any future dependency proceedings, as would the facts that Mother moved out of the grow house, took prompt and positive steps to reunite with N.S., and quickly regained custody of her child.  Because Mother has not shown any adverse effect from the jurisdictional findings, we decline to exercise our discretion to review them.

### III.
#### DISPOSITION

Mother's appeal is dismissed.

_____
Humes, P.J.

We concur:


_____
Margulies, J.


_____
Dondero, J.

11

Trial Court:                                          Alameda County Superior Court

Trial Judge:                                        Honorable Willie Lott

Counsel for Objector and Appellant:        Leslie A. Barry
By appointment of the Court of Appeal under the
First District Appellate Project

Counsel for Petitioner and Respondent:     Office of the County Counsel
County of Alameda
Donna R. Ziegler
County Counsel
Nicole L. Roman
Deputy County Counsel