Filed 4/28/16  In re Jeremiah R. CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re JEREMIAH R., a Person Coming Under the Juvenile Court Law. | B266452 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>L.R.,<br><br>        Defendant and Appellant. | (Los Angeles County Super. Ct. No. DK11485) |

APPEAL from orders of the Superior Court of Los Angeles County, Debra Losnick, Commissioner.  Dismissed.

Merrill Lee Toole, under appointment by the Court of Appeal, for Appellant.

Mary C. Wickham, County Counsel, R. Keith Davis, Assistant County Counsel, and Tracey F. Dodds, Deputy County Counsel, for Respondent.

_____

The juvenile dependency court adjudged a minor to be a dependent of the court. Appellant L.R. (hereafter Mother) contends the court's jurisdiction orders are not supported by substantial evidence. We dismiss Mother's appeal because it is moot.

**FACTS**

Mother and Angel E. (Father) are the parents of Jeremiah R., born in September 2010. Father, whose whereabouts are unknown, is not involved in the current appeal. At all relevant times, Mother and Jeremiah lived in an apartment with maternal grandmother, and other relatives, including Mother's sister.

In March 2015, a "mandated reporter"[1] contacted the Los Angeles County Department of Children and Family Services (DCFS) to express concerns about "general neglect" involving Mother and then four-year-old Jeremiah. According to the mandated reporter, Jeremiah had stated that Mother yelled at him and used "bad words." Further, the mandated reporter had asked the maternal grandmother whether Mother "was an alcoholic," and maternal grandmother answered that Mother "drinks sometimes."

Over a course of several days in March, April and May 2015, after receiving the report noted above, a DCFS social worker talked to Mother, Jeremiah and the maternal grandmother. Mother denied yelling at Jeremiah, but admitted to using inappropriate language in his presence. Jeremiah reported that Mother hit him on the hand when he misbehaved, and it hurt. The social worker talked to Mother about participating in a parent-child interactive therapy program, but Mother said that she did not want any services that would require her to leave her home. The social worker also advised Mother that Jeremiah was eligible to enroll in a transitional kindergarten program, to which Mother said that she would "look into" the subject. The social worker also referred Mother to Partnership for Families (PFF) services. Jeremiah was not current in his immunization shots, and the social worker reminded Mother to make sure that

---

[1] The Child Abuse and Neglect Reporting Act (Pen. Code, § 11164 et seq.) defines certain persons, for example, teachers, school administrators and child day care workers, as mandated reporters, and requires such persons to report any suspected child abuse or neglect to local police officials or county social welfare department. (See, generally, Pen. Code, §§ 11165.7, 11165.9.)

2

Jeremiah received his shots. Mother only participated in the initial intake for the PFF services. After her initial visit, Mother refused to meet with her counselor or return any telephone calls. The counselor opined that Mother agreed to services solely for the purpose of "getting DCFS off her back."

Maternal grandmother reported an incident when Mother came home intoxicated, and said that Mother often came home drunk. Further, Mother spent all of her time in the house, and did not work or go to school. Maternal grandmother also reported that she believed that Mother "mistreated" Jeremiah, including "scream[ing]" at him. Mother's explanation was that the maternal grandmother was very religious, and disapproved of how Mother lived her life. Mother said that she drank about once a week, normally four 18-ounce beers, but never in the family home. She would not drink until she became "drunk," only "tipsy." She would leave Jeremiah either with her sister or the maternal grandmother when she went out drinking.

In late May 2015, DCFS filed a petition on Jeremiah's behalf pursuant to Welfare and Institutions Code section 300, subdivision (b), alleging Mother's drinking caused her to be unable to provide regular care to Jeremiah.[2] The court detained Jeremiah and ordered that he remain released to Mother on the condition that she continue to reside with the maternal grandmother.

In June 2015, DCFS submitted its jurisdiction/disposition report. According to that report, Mother told the social worker that she lacked the motivation to participate in a parenting class or individual counseling. Although family preservation services were offered, Mother said she was not willing to participate unless it was court ordered. Mother had failed to enroll Jeremiah in school, and she did not follow up with his immunizations. DCFS recommended that the dependency court take jurisdiction and declare Jeremiah a dependent of the court. The social worker opined that Jeremiah could

---

[2] All further section references are to the Welfare and Institutions Code. DCFS's petition also included an allegation pursuant to section 300, subdivision (a)—"physical harm"—, involving Mother's "striking" Jeremiah. That dependency court eventually found that this allegation was not sustained by the evidence, and we hereafter ignore the dependency ground of physical harm in this opinion.

safely remain with Mother, provided she participated in family preservation services, including individual counseling, Alcoholics Anonymous meetings, and random testing for drugs and alcohol.

On July 14, 2015, the dependency court sustained the section 300 petition based on the reports submitted by DCFS.[3]  Mother failed to appear for the jurisdiction hearing despite the court's order to do so.  During arguments, Mother's counsel asserted that the petition should be dismissed in its entirety.  Jeremiah's counsel argued that the court should take jurisdiction over Jeremiah, noting Mother's lack of cooperation with DCFS.  In finding grounds existed for jurisdiction, the court stated:

> "The court looks at the jurisdiction report, page 9, where the grandmother indicates that Mother comes home so drunk, that she told Mother: 'imagine what you would do if I was not here,' which causes the court concern.  I don't feel it's appropriate for . . . Mother to rely on the grandmother to care for her child if the grandmother had to work or so on. . . . [M]other is coming home under the influence, with a very young child in the home."

The dependency court placed Jeremiah in the home of Mother, on the condition that she continue to reside with the maternal grandmother.  Further, the court ordered Mother to provide six random drug and alcohol tests, attend Alcoholics Anonymous meetings, and participate in parenting classes, counseling and Family Preservation programs.

---

[3]    As sustained, the section 300 petition read:  "[Mother] is a substance abuser and currently abuses alcohol which renders [her] incapable of providing the child with regular care and supervision.  On prior occasions, [Mother] was under the influence of alcohol while the child was in [Mother]'s care and supervision.  The child is of such a young age requiring constant care and supervision and [Mother]'s substance abuse interferes with providing the regular care and supervision of the child.  Such substance abuse by [Mother] endangers the child's physical health and safety and places the child at risk of physical harm and damage."

Mother filed a timely notice of appeal. In November 2015, Mother filed her opening brief on appeal.

On December 16, 2015, the dependency court terminated its jurisdiction over Jeremiah with orders that Mother have sole legal and physical custody of her son.

## DISCUSSION

DCFS contends we should dismiss Mother's appeal as moot because, while the appeal was pending in our court, the dependency court terminated its jurisdiction over Jeremiah and returned him to Mother's custody, without any continuing orders adverse to Mother. We agree.

*In re N.S.* (2016) 245 Cal.App.4th 53 (*N.S.*) is instructive and guides our decision to dismiss Mother's appeal. In pertinent part and as edited so as to conform to Mother's current appeal, *N.S.* reasons:

"As a general rule, it is a court's duty to decide ' " 'actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it.' " ' (*Eye Dog Foundation v. State Board of Guide Dogs for the Blind* (1967) 67 Cal.2d 536, 541.) An appellate court will dismiss an appeal when an event occurs that renders it impossible for the court to grant effective relief. (*Ibid.*) . . .

"[¶] . . . [¶]

"[As noted], the critical factor in considering whether a dependency appeal is moot is whether the appellate court can provide any effective relief if it finds reversible error. This standard was relied upon more than two decades ago in a case from Division Five of [the First District Court of Appeal] that dismissed an earlier appeal in light of a subsequent dismissal by the juvenile court of the dependency action. (*In re Michelle M.* (1992) 8 Cal.App.4th 326, 328-329 (*Michelle M.*).) The procedural posture in that case was similar to the posture here. There, the father appealed jurisdictional and dispositional orders finding his children to be dependents of the juvenile court. (*Id.* at pp. 327-328.) During the pendency of the appeal, the juvenile court terminated its

5

jurisdiction. (*Id.* at p. 328.) The juvenile court also transferred its custody-and-visitation order, which prohibited contact between the father and his children except under certain circumstances, to the superior court under section 362.4. (*Michelle M.*, at p. 328.) That statute provides that a juvenile court's order terminating jurisdiction may be used as the sole basis for opening a separate file in the superior court when there is no current action pending relating to the minor's custody. (See *ibid.*) Over the father's objection, Division Five dismissed the appeal from the jurisdictional findings, concluding that there was no longer effective relief that could be granted because 'the juvenile court no longer has jurisdiction and we are only reviewing that court's ruling,' as opposed to the subsequent ruling dismissing jurisdiction and transferring the matter to the superior court. (*Id.* at p. 330.)

"In *In re Joshua C.* (1994) 24 Cal.App.4th 1544, 1546-1547 (*Joshua C.*) the court similarly focused on whether it could grant any effective relief in deciding whether an appeal from earlier jurisdictional findings was moot in light of a dismissal of the dependency proceedings. In that case, the juvenile court sustained a dependency petition finding that a father sexually abused his daughter, awarded sole physical and legal custody of the girl and her twin brother to the mother (with whom the minors had been living throughout the dependency proceedings), and terminated dependency jurisdiction. The appellate court held that it could consider the father's appeal from the jurisdictional findings, notwithstanding the termination of dependency proceedings, because those findings were the basis for restrictive visitation and custody orders that continued to negatively affect the father. (*Id.* at p. 1548.) 'If the jurisdictional basis for orders restricting appellant's visitation with, and custody of, [appellant's son] is found by direct appeal to be faulty, the orders would be invalid.' (*Ibid.*; see also *In re J.K.*, *supra*, 174 Cal.App.4th at pp. 1431-1432 [juvenile court's dismissal did not render appeal moot where sustained jurisdictional findings had an adverse effect on his custody rights, and court-imposed stay-away order would remain in effect against him after dismissal]; *In re Hirenia C.* (1993) 18 Cal.App.4th 504, 517 [where an issue raised in a notice of appeal in

a dependency case continues to affect the rights of the child or parents, appeal not necessarily rendered moot by dismissal of underlying dependency proceedings].)

"Here, unlike in *Joshua C.*, no effective relief can be granted. Mother has been awarded custody of [Jeremiah], *and the jurisdictional findings are not the basis of any current order that is adverse to her. . . .* [T]here is no relief to provide her [on] her appeal from the jurisdictional findings . . . .

"Mother . . . relies on *Joshua C.*, *supra*, 24 Cal.App.4th 1544, in arguing that this court should review the juvenile court's jurisdictional findings because possibly erroneous findings will otherwise be left unexamined. Her reliance is misplaced. It is true that *Joshua C.* noted that leaving the alleged jurisdictional errors unaddressed on appeal could have 'the undesirable result of insulating erroneous or arbitrary rulings from review.' (*Id.* at p. 1548.) But, unlike here, the jurisdictional findings in *Joshua C.* were the foundation for visitation-and-custody orders that remained in effect.

"Some courts have relied on *Joshua C.*'s language in declining to dismiss appeals from juvenile-court orders entered prior to the dismissal of dependency proceedings even though the parents made no showing that the challenged orders adversely affected them in light of the dismissal. (E.g., *In re Daisy H.* (2011) 192 Cal.App.4th 713, 716 [appeal not dismissed even though underlying proceedings dismissed and father awarded joint custody under mediation agreement, because jurisdictional findings 'could have severe and unfair,' yet unspecified, consequences]; *In re C.C.* (2009) 172 Cal.App.4th 1481, 1488-1489 [juvenile court terminated jurisdiction during pendency of appeal and awarded mother 'the very relief' she sought in her appeal; although mother's concern about possible detriment in future proceedings 'highly speculative,' appellate court reviewed visitation order 'in an abundance of caution'].)

"We see no reason to review the juvenile court's jurisdictional findings here on the basis of such speculation or caution. . . . [¶] . . . [E]ven if we were to conclude that the juvenile court's jurisdictional findings erroneously resolved a close call, there remains no effective relief we could give Mother beyond that which she has already obtained. We are mindful that parents of young children face the prospect of possible future

7

juvenile court intervention.  One commentator has observed that '[b]ecause the court's jurisdictional findings could have negative consequences for the parent in collateral proceedings, it can be argued that a parent's appeal challenging those findings is not moot.  Although juvenile proceedings are confidential in nature, the jurisdictional facts might be disclosed by a social worker in a future petition or might be disclosed in the client's future application for a foster license.'  (Abbott et al., Cal. Juvenile Dependency Practice [(Cont.Ed.Bar. 2015) Existence of Continuing Controversy], § 10.40, p. 861.)  We are unconvinced, however, that any ruling we could issue here would have any practical effect on future dependency proceedings.  . . .  Because Mother has not shown any adverse effect from the jurisdictional findings, we decline to exercise our discretion to review them." (*N.S., supra*, 245 Cal.App.4th at pp. 58-63, fns. omitted.)

We agree with this analysis and find it fully applicable here, rendering the appeal moot.

## DISPOSITION

Mother's appeal is dismissed.


BIGELOW, P.J.

We concur:


FLIER, J.


GRIMES, J