Filed 12/22/20  In re Jeanine R. CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re JEANINE R. et al., Persons Coming Under the Juvenile Court Law. | B301685 (Los Angeles County Super. Ct. No. 19CCJP05049) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. FELIPE R. et al., Defendants and Appellants. | |

APPEAL from an order of the Superior Court of Los Angeles County, Annabelle G. Cortez, Judge.  Dismissed.

Paul A. Swiller, under appointment by the Court of Appeal, for Defendant and Appellant Felipe R.

Patricia K. Saucier, under appointment by the Court of Appeal, for Defendant and Appellant Yeny R.

Mary C. Wickham, County Counsel, Kristine P. Miles, Assistant County Counsel, and William D. Thetford, Principal Deputy County Counsel, for Plaintiff and Respondent.

_____

Yeny R. (Mother) and Felipe R. (Father) appeal from the juvenile court's jurisdiction findings and disposition order declaring 12-year-old Jonathan R. and four-year-old Jenesis R. dependents of the court pursuant to Welfare and Institutions Code[1] section 300, subdivision (b)(1). Mother also appeals from the disposition order as to 14-year-old sibling Jeanine R. The children came to the attention of the Los Angeles County Department of Children and Family Services (Department) after Father slapped Jeanine, who had severe mental and emotional problems.

Mother and Father contend as to Jonathan and Jenesis substantial evidence does not support the jurisdiction findings that the children were placed at substantial risk of serious harm and the juvenile court abused its discretion in failing to terminate dependency jurisdiction over Jonathan and Jenesis at the disposition hearing because by that time Jeanine was not living in the family home. The juvenile court has since

---

[1]     Further undesignated statutory references are to the Welfare and Institutions Code.

2

terminated jurisdiction as to Jonathan and Jenesis and released them to Mother and Father. Because we cannot grant Mother and Father effective relief, we dismiss their appeals as to Jonathan and Jenesis.

Mother contends as to Jeanine the juvenile court abused its discretion by delegating to the Department the discretion to determine the frequency and duration of Mother's visitation with Jeanine, who was placed in a therapeutic foster care treatment facility an hour from where Mother and Father live. Mother's appeal as to Jeanine has also been rendered moot by a subsequent order requiring overnight unmonitored visitation with Mother to resume and for Mother or Father to return to court if the visits do not resume.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *The Referral and Petition*

On July 18, 2019 the Department received a referral alleging Father had physically abused then-13-year-old Jeanine. The caller stated Jeanine had been placed on a section 5585 hold by law enforcement.[2] According to the caller, Jeanine had a black eye that appeared fresh. Jeanine stated Father hit her a lot as a form of discipline. Father did not deny he hit Jeanine, but he

---

[2] The Children's Civil Commitment and Mental Health Treatment Act of 1988 (§ 5585 et seq.) provides for a 72-hour evaluation and treatment in an evaluation facility of a minor who "as a result of mental disorder, is a danger to others, or to himself or herself, or gravely disabled and authorization for voluntary treatment is not available." (§ 5585.50, subd. (a).)

stated he did so in self-defense while Jeanine was having a mental health crisis. The caller stated Jeanine had been hospitalized numerous times for being a danger to herself and others, and she had a history of self-cutting and suicidal ideation. The caller also stated Jeanine had homicidal ideation with a plan to stab her parents. She had been diagnosed with major depressive disorder with psychotic symptoms and had been prescribed psychotropic medication. Mother stated Jeanine's discharge plan provided for her to be placed in a residential mental health facility. On August 5, 2019 the juvenile court issued a removal order, and the Department detained Jeanine at a residential facility. Jonathan and Jenesis remained with Mother and Father.

On August 8, 2019 the Department filed a petition alleging Jeanine, Jonathan, and Jenesis came within the jurisdiction of the juvenile court under section 300, subdivisions (a), (b)(1), and (j). The petition alleged Father physically abused Jeanine by slapping her face and inflicting redness and swelling, and he and Mother were unable to provide parental care and supervision over Jeanine because of Jeanine's severe mental and emotional problems, including suicide attempts, homicidal ideation, and aggressive behavior. The petition alleged Mother and Father failed to protect the three children from harm.

At the detention hearing on August 9, 2019, the court ordered Jeanine detained and Jonathan and Jenesis released to Mother and Father. The court ordered Mother to have monitored visits at a minimum of three times per week for three hours each visit. The court ordered "[t]he Department to follow up and set up a written visitation schedule with [Mother]. The minimum [is] three times a week. But that is consistent with any rules in

4

terms of placement." Father agreed to have no visitation pending the jurisdiction hearing.

B. *The Jurisdiction/Disposition Report and Addendum Report*

On August 16, 2019 Mother talked to the social worker about her visitation with Jeanine. The social worker stated that although the Department was working to accommodate visitation, the facility where Jeanine had been placed stated it was not in Jeanine's best interest to allow visits with Mother due to the child's mental health and well-being.

On August 27 Jeanine was placed in an intensive therapeutic foster care home in Victorville. She was doing well in the home. Mother called Jeanine every day. Mother, Jeanine, and Jeanine's siblings spoke every day for about 30 minutes.

On August 30 Mother informed the social worker she had not been able to see Jeanine since Jeanine was detained. Mother had contacted the foster home, which told her she could have a single nine-hour weekly visit "all the way at the high [desert]," even though the court had ordered three 3-hour visits. Mother later met with social worker Nischell Tolbert, who had just been assigned the case. Tolbert explained she needed time to review the file and to make a visitation schedule. She asked Mother for her availability, and Mother responded she was available except she needed to pick up Jonathan by 5:30 p.m. from school. Tolbert agreed to provide a visitation schedule the following week.

On September 4 Tolbert mailed a visitation schedule to Mother and called her to discuss the schedule. The visitation schedule provided for Mother to have visits with Jeanine for

three hours on Wednesdays and six hours on Saturdays.[3]  The agreement provided for the foster parents to transport Jeanine to and from the visits.

Mother e-mailed Tolbert that evening to express her concerns about the schedule.  Mother explained she was available Tuesdays and Sundays, but not Wednesdays and Saturdays, and a six-hour visit would not be "in our best interest," instead of two visits for four and a half hours each.  Mother also requested the visits be "at the half way point for both of us," and in a park instead of a mall.  Mother complained she was not consulted about her availability for visits, and her comment to Tolbert that she needed to pick up Jonathan at 5:30 p.m. on school days was not in response to "a direct question about availability for visitation."

The Department recommended the children be declared dependents of the juvenile court with Jonathan and Jenesis placed with Mother and Father and Jeanine removed from the parents' home with family reunification services.  The Department recommended Mother have monitored visitation with Jeanine, and Father visit Jeanine in a therapeutic setting.

C.     *The Jurisdiction Hearing*

At the jurisdiction hearing on September 23, 2019, Mother and Father urged the juvenile court to dismiss the petition as to Jonathan and Jenesis because they were not at risk of

---

[3]     The visitation schedule, dated September 4, 2019, is titled "Visitation Agreement," and it states the agreement was reached among the Department, the caregiver, and Mother.  Mother disputes she was ever consulted about the schedule.

6

substantial harm from witnessing the incident between Father and Jeanine, and Jeanine was no longer living at home. Mother's counsel submitted as to Jeanine. Father requested the court strike the allegation Father physically abused Jeanine. Counsel for Jonathan and Jenesis objected to dismissing the allegations as to Jonathan and Jenesis because the siblings had been present for "severe behavioral issues" and were afraid. However, the Department and minors' counsel agreed with Father's proposal to strike the language regarding his physical abuse of Jeanine.

The juvenile court sustained the petition as to all three children, amended to allege under section 300, subdivision (b)(1), that Mother and Father were unable to provide Jeanine with appropriate parental care and supervision due to her severe mental and emotional problems, including suicide attempts and aggressive behavior; Father "is unable to appropriately address [Jeanine's] behaviors and has physically disciplined [Jeanine] in response to [her] behaviors"; Jonathan and Jenesis were present and were afraid; and Mother and Father's inability to provide appropriate parental care and supervision of Jeanine placed Jonathan and Jenesis at risk of serious physical harm. The court dismissed the allegations under section 300, subdivisions (a) and (j).

The juvenile court continued the disposition hearing to address placement of Jeanine. Mother and Father requested Jeanine be placed in an intensive therapeutic foster home in Los Angeles County instead of Victorville so she could be closer to her family. The court directed the Department to make efforts to place Jeanine in a facility in Los Angeles County that met her needs. Mother's attorney stated Mother had not been able to visit Jeanine because of "scheduling and distance." The attorney

explained Mother had requested the Department meet with her to "come up with a schedule that fits her needs. Because . . . the proposed schedule that was given to Mother didn't work with her since she has to pick up [her other] children from school . . . . So she is able to as long as the Department is flexible with Mother given the distance." Father did not have visitation because he had agreed to wait for the court to order visitation at the hearing.

The court ordered "the Department to work out a written visitation schedule with [Mother and Father] within seven days. And the Department to take into account the fact that Jeanine is placed out of county and that the parents have Jonathan and Jenesis in their care, so just to work with their schedules in working out something that accommodates the distance and the schedule." The court also ordered the Department to look into alternatives until Jeanine transitioned to a placement in Los Angeles County. The court added, "[T]he Department [is] to ensure that the parents are getting consistent contact with Jeanine . . . ." The court ordered "the Department to ensure that they're working closely with the parents so that . . . they can remain involved in Jeanine's care."

D.    *The Disposition Hearing*
The October 16, 2019 last minute information for the court reported the Department had requested placement for Jeanine in an intensive specialized foster care home in the Los Angeles area, but no homes were available. Mother continued to object to the visitation schedule, but the foster parents were not able to supervise a visit on Sundays, which is why they requested Wednesdays and Saturdays. Mother was "refusing to travel per visitation schedule."

8

At the disposition hearing on October 16, the Department recommended Jeanine be removed from Mother and Father and suitably placed and Jonathan and Jenesis be released to Mother and Father. Mother agreed with the Department's recommendation, but she renewed her request Jeanine be placed in Los Angeles County instead of over an hour away in Victorville. In addition, Mother had not had any visits because of the location, and the schedule was "virtually impossible for her to make" because she was caring for the younger siblings. Mother was willing to travel halfway to the foster home for visitation. Mother requested the Department modify the visitation schedule to work with her schedule. Mother also urged the juvenile court to terminate jurisdiction as to Jonathan and Jenesis. Father joined in Mother's requests. Counsel for Jonathan and Jenesis argued jurisdiction was still warranted as to Jonathan and Jenesis because of the significant issues with Jeanine.

The court declared Jeanine, Jonathan, and Jenesis dependents of the court under section 300, subdivision (b), ordered Jeanine removed from Mother and Father, and released Jonathan and Jenesis to the home of Mother and Father. As to visitation with Jeanine, the juvenile court noted the visitation schedule prepared by the Department predated the jurisdiction hearing. The court ordered "the Department to follow up with both parents and work out a written visitation schedule that takes into account the various barriers, including the distance." The court noted the current visitation order provided for one long visit on Saturdays, but the court suggested the Department find alternatives to the visitation order to allow a long visit, but with increased contact with Jeanine. The court also ordered the Department to continue its efforts to place Jeanine in an

intensive therapeutic foster home in Los Angeles County. Further, the court ordered the Department "to work out a visitation schedule that takes into account the parents['] and Jeanine's needs and the distance . . . as well as the parents' availability." The court denied the parents' request to terminate jurisdiction as to Jonathan and Jenesis. The court ordered Jeanine be suitably placed and Jonathan and Jenesis released to Mother and Father.

The court's October 16, 2019 minute order reflects that the juvenile court signed and filed the attorney order submitted by minors' counsel on that date. The order states it was prepared by Mother's counsel and agreed to by counsel for Father, the minors, and the Department. The order provides for the Department to continue its efforts to place Jeanine in an intensive therapeutic foster home in Los Angeles County. As to visitation, the order requires the Department "to follow up with the parents about their availability for visits and provide [the] parents with a written visitation schedule," and as long as Jeanine is placed outside of Los Angeles County, "to facilitate visits at the halfway point."

Mother and Father timely appealed.

E.   *The Juvenile Court's Termination of Jurisdiction*

On September 23, 2020 the juvenile court terminated jurisdiction over Jonathan and Jenesis and released the children to Mother and Father.[4] As to Jeanine, Mother and Father had

---

4    On our own motion we take judicial notice of the September 23, 2020 minute orders and hearing transcript. (Evid. Code, § 452, subd. (d).) Consideration of postjudgment evidence

10

progressed to unmonitored weekend visitation, including overnight visits, until there were "two incidents" that led to visitation becoming monitored, and then to stop. As Jeanine's attorney explained, there had been a falling out between the family and Jeanine, which occurred at recent visitations and conjoint therapy sessions, causing Jeanine "to remove herself from the family[,] and both [Jeanine and the family] had to take a break from seeing and talking to each other." The court continued jurisdiction as to Jeanine, finding by clear and convincing evidence return of Jeanine to the physical custody of the parents would create a substantial risk of detriment to Jeanine. However, the court found "[t]here is a substantial probability that Jeanine may be returned home by the next review period," with the next hearing scheduled for February 6, 2021.

The court ordered the Department "to follow up and ensure overnight visitation resumes safely" and provided that "[c]ounsel has discretion to walk the matter on the Court's calendar if overnight visitation does not resume within 30 days." The court envisioned that "overnights can resume before the next court hearing." The order also provided the Department "has continued discretion to liberalize parents' visits" and "[a]ll prior

_____

is appropriate when the later orders are relevant to a motion to dismiss an appeal or to a determination whether the evidence renders the appeal moot. (*In re Josiah Z.* (2005) 36 Cal.4th 664, 676 ["appellate courts routinely consider limited postjudgment evidence" for motions to dismiss]; *In re N.S.* (2016) 245 Cal.App.4th 53, 58 [appellate court may consider postappeal rulings that affect its ability to grant effective relief].)

orders not in conflict shall remain in full force and effect."
Mother and Father have not appealed from the order terminating
jurisdiction over Jonathan and Jenesis.

## DISCUSSION

A.  *Mother's and Father's Appeals as to Jonathan and Jenesis*
    *Are Moot*

The Department contends Mother's and Father's appeals
are moot as to Jonathan and Jenesis because the juvenile court
terminated jurisdiction with Mother and Father retaining
custody.[5]  Mother and Father argue their appeals are not moot
because absent reversal of the jurisdiction findings, they will be
prejudiced in any future juvenile or family court proceeding
involving Jonathan or Jenesis by the finding they failed to protect
the children from an unreasonable risk of harm.  Father also
argues he would suffer a stigma from the juvenile court's
findings, and the findings would "likely" cause Father's name to
be listed in the Child Abuse Central Index (CACI).  (See Pen.
Code, § 11169, subd. (a) [providing designated agencies, including
the Department, "shall forward to the Department of Justice a
report in writing of every case it investigates of known or

---

[5]  At our request, the Department, Mother, and Father
submitted supplemental letter briefs addressing whether the
juvenile court's September 23, 2020 orders rendered moot
Mother's and Father's appeals.  The Department in its letter brief
states it does not oppose reversing the jurisdiction findings as to
Jonathan and Jenesis, but it acknowledges that termination of
jurisdiction rendered the appeal moot.

12

suspected child abuse or severe neglect that is determined to be substantiated, other than cases coming within subdivision (b) of Section 11165.2," which defines "'[g]eneral neglect'"].) Mother's and Father's appeals are moot as to Jonathan and Jenesis.

We have a duty to decide actual controversies and not to give opinions upon moot questions. (*Eye Dog Foundation v. State Board of Guide Dogs for the Blind* (1967) 67 Cal.2d 536, 541; *In re David B.* (2017) 12 Cal.App.5th 633, 644.) A dependency appeal ""'becomes moot when, through no fault of the respondent, the occurrence of an event renders it impossible for the appellate court to grant the appellant effective relief.'"" (*In re J.P.* (2017) 14 Cal.App.5th 616, 623; accord, *In re David B.*, at p. 644 [appeal moot where minor was over 18 at time of appeal]; *In re N.S.* (2016) 245 Cal.App.4th 53, 61 (*N.S.*) [mother's appeal moot where juvenile court awarded her custody of minor and dismissed dependency proceedings].)

An order terminating juvenile court jurisdiction generally renders an appeal from a previous order moot because the appellate court can no longer grant effective relief. (*In re C.C.* (2009) 172 Cal.App.4th 1481, 1488.) There may be circumstances where termination of jurisdiction will not render an appeal moot because an erroneous jurisdiction finding results in an order that continues to affect the parent adversely. (See *In re J.P., supra,* 14 Cal.App.5th at p. 623 [father's appeal not moot where he lost legal and physical custody of his children with only monitored visitation]; *In re Joshua C.* (1994) 24 Cal.App.4th 1544, 1547-1548 [father's appeal not rendered moot by termination of jurisdiction where juvenile court awarded sole physical and legal custody to mother and restricted father's visitation].) This is not one of those situations.

13

The procedural posture here is similar to *N.S.*, in which the court concluded the mother's appeal was moot because she was awarded custody of her child and "the jurisdictional findings [were] not the basis of any current order that [was] adverse to her." (*N.S., supra*, 245 Cal.App.4th at p. 61.) Jonathan and Jenesis have remained in Mother and Father's custody, and there is no exit order that adversely affects them. Mother and Father raise a concern about the impact the juvenile court's jurisdiction findings would have in a hypothetical future dependency case, but the court's findings are based on the facts concerning their response to Jeanine's severe mental and emotional problems. Regardless of whether we reach the merits, "[t]hose facts would almost certainly be available in any future dependency proceedings . . . ." (*Id.* at p. 63.) In addition, the facts that could have been potentially prejudicial to Father—the initial allegation of Father's physical abuse of Jeanine—were stricken from the amended petition. Further, a determination of any future dependency case would need to be based on conditions that exist at that time. (*In re I.A.* (2011) 201 Cal.App.4th 1484, 1494-1495 [rejecting father's contention court should consider appeal of jurisdiction finding based on a five-year-old act of domestic violence in light of impact finding would have on future dependency proceeding].)

Father's concern that the juvenile court's findings would cause his name to be placed on the CACI database is speculative. As discussed, Penal Code section 11169, subdivision (a), provides for reporting of substantiated "child abuse or severe neglect."[6] As

---

[6] Whether a report of child abuse or neglect is "substantiated" for purposes of Penal Code section 11169 does not

relevant here, the statute defines "child abuse" to include "willfully caus[ing] or permit[ting] any child to suffer, or inflict[ing] thereon, unjustifiable physical pain or mental suffering" (Pen. Code, § 11165.3) and "willfully inflict[ing] upon any child any cruel or inhuman corporal punishment or injury resulting in a traumatic condition" (§ 11165.4).  (See Pen. Code, § 11165.6 [defining "child abuse or neglect" under the statute].)  "Severe neglect" is defined under section 11165.2, subdivision (a), as where a person with care or custody of a child "willfully causes or permits the person or health of the child to be placed in a situation such that his or her person or health is endangered, . . . including the intentional failure to provide adequate food, clothing, shelter, or medical care."  The juvenile court sustained the petition as amended to allege Father "is unable to appropriately address [Jeanine's] behaviors and has physically disciplined [Jeanine] in response to [her] behaviors"  The failure

---

depend on whether a juvenile court has sustained a Welfare and Institutions Code section 300 petition relating to the abuse allegations.  Rather, "[a] report is "'[s]ubstantiated'" if the conduct reported is 'determined by the investigator who conducted the investigation to constitute child abuse or neglect . . . , based upon evidence that makes it more likely than not that child abuse . . . occurred.  A substantiated report shall not include a report . . . [found by] the investigator who conducted the investigation . . . to be false, inherently improbable, to involve an accidental injury, or to not constitute child abuse or neglect as defined in Section 11165.6.'  (Pen. Code, § 11165.12, subd. (b).)" (*Gonzalez v. Santa Clara County Dept. of Social Services* (2014) 223 Cal.App.4th 72, 85.)

to protect at issue here does not reasonably fall within these definitions of child abuse or severe neglect.

Because Mother and Father have not shown any prejudice from the jurisdiction findings or disposition order for which we can grant effective relief, we dismiss their appeals.

B.      *We Cannot Grant Mother Effective Relief as to Jeanine*

Mother contends the juvenile court abused its discretion in delegating to the Department the creation of a visitation schedule for Jeanine without setting a minimum number of visits and hours each week.  But given the current circumstances—including an increase in visitation to unmonitored weekend overnight visitation—we can no longer provide effective relief.

At the detention hearing on August 9, 2019, the court ordered Mother to have monitored visits at a minimum of three times per week for three hours each visit.  That order has remained in place, and the Department consistently provided Mother with nine hours per week of visitation, but on days Mother asserted were unacceptable.  For example, the September 4, 2019 visitation schedule provided for a three-hour visit on Wednesdays and a six-hour visit on Saturdays, but Mother stated she was unavailable on those days, and she requested the Department arrange for four-and-a-half-hour visits.  Following the disposition hearing, the court entered a visitation order requiring the Department to provide a revised visitation schedule to the parents that would accommodate their needs and facilitate visitation.

Mother's request we reverse the disposition order and direct the juvenile court to set a specific number of weekly visits and hours of duration has been rendered moot by the progression

16

of visitation to overnight visits as of the September 23, 2020 hearing.  Further, even if we were to order the juvenile court to set a specific number of hours of required visitation, by the time of the September 23 hearing, there were two incidents involving Jeanine and the family that had caused visitation temporarily to cease.  The court acknowledged Jeanine would likely return home by the February 6, 2021 hearing, so it ordered the Department to "ensure overnight visitation resumes safely."  And, if overnight visitation did not resume within 30 days of the hearing, Mother or Father could return to court for relief.  The court also made clear "[a]ll prior orders not in conflict shall remain in full force and effect," which would include the visitation order entered at the detention hearing providing for nine hours of visitation each week.  Under these circumstances, given that the court has now ordered overnight visitation to resume, the prior order setting nine hours of visitation each week remains in effect, and the parents and the Department need to address the family dynamic that caused the visits to cease, the relief requested by Mother with respect to the disposition order—directing the court set a specific number of weekly visits and hours of visitation—would not address the current circumstances.  To the extent Mother now seeks relief to ensure visitation returns to unmonitored overnight visitation, this is not relief we can provide.  Thus, her appeal as to Jeanine is also moot.  (*N.S., supra*, 245 Cal.App.4th at p. 61.)

## DISPOSITION

Mother's and Father's appeals as to Jonathan, Jenesis, and Jeanine are dismissed.

FEUER, J.

We concur:

PERLUSS, P. J.

DILLON, J.*

---

*      Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.