Filed 9/13/23  In re P.B. CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re P.B. et al., Persons Coming Under the Juvenile Court Law. _____ LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> B.B., <br><br> Defendant and Appellant. | B323390 <br><br> Los Angeles County Superior Court No. 22CCJP01323A-B |

APPEAL from orders of the Superior Court of Los Angeles County, Linda L. Sun, Judge.  Affirmed in part and dismissed in part.

Robert McLaughlin, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Stephen Watson, Senior Deputy County Counsel, for Plaintiff and Respondent.

_____

Six months after a mother moved her young daughters from Texas to California, the Los Angeles Department of Children and Family Services initiated dependency proceedings. By then, the girls' father was incarcerated in Texas for failing to register as a sex offender.

The California juvenile court eventually assumed jurisdiction over the children, declared them dependents, removed them from parental custody, and denied the father visitation and reunification services. The father appealed, but not the mother.

Regarding the father, the juvenile court sustained allegations the father had sexually abused both girls, including one occasion where he taped one daughter's mouth closed, "fondled the child's vagina and buttocks with [his] fingers" and tried to lick her there, and another occasion where he penetrated his other daughter's vagina with a coat hanger.

The father's appeal challenges none of these findings. Instead, the father contends the juvenile court's acts exceeded its authority because the court did not comply with the Uniform Child Custody Jurisdiction and Enforcement Act (Fam. Code, § 3400 et seq.) (UCCJEA). He also claims, as to various paternal relatives, the court and the Department violated their inquiry duties under the Indian Child Welfare Act (25 U.S.C. § 1901 et seq.; Welf. & Inst. Code, § 224 et seq.) (ICWA). We affirm regarding the former claim and do not reach the second because

it is moot.  Undesignated statutory citations are to the Family Code.

I

The UCCJEA determines the proper forum for child custody proceedings when multiple interested states are involved. It applies to dependency proceedings whenever a California court must make an initial or modified custody determination.  (*In re L.C.* (2023) 90 Cal.App.5th 728, 735 (*L.C.*); *A.M. v. Super. Ct.* (2021) 63 Cal.App.5th 343, 350 (*A.M.*).)

California courts have jurisdiction to make an *initial* custody determination if California is the child's home state— meaning the child has lived with a parent there for at least six consecutive months immediately before the proceedings. (§§ 3421, subd. (a)(1), 3402, subd. (g)); *L.C.*, *supra*, 90 Cal.App.5th at p. 736.)  The father concedes California was the children's home state when these dependency proceedings began.

A California court may *modify* another state's custody determination if it has jurisdiction to make an initial determination as just explained and the court of the other state determines it no longer has exclusive, continuing jurisdiction or California would be a more convenient forum.  (§ 3423, subd. (a); *A.M.*, *supra*, 63 Cal.App.5th at p. 353 fn.7.)

Substantial evidence shows this is what happened here. (See *A.M.*, *supra*, 63 Cal.App.5th at p. 351 [findings of fact made in determining jurisdiction under the UCCJEA subject to deferential substantial evidence standard].)  The juvenile court had jurisdiction over these children.

The father says there were earlier custody orders in Texas family court but concedes "[t]he record on appeal does not contain any documents pertaining to the Texas family court orders."

3

Nevertheless, the juvenile court recognized there might be a UCCJEA issue at the April 2022 detention hearing and said it was in the process of preparing a letter for the Texas court. At the May 2022 arraignment hearing, the court noted it had received a response from a representative of the Texas Department of Family and Protective Services saying, among other things, there were no open investigations in Texas, they were not planning to assert jurisdiction, and "they are now turning their records on the family over to California. Texas is not the court of continuing jurisdiction, . . . ." This representative followed up with an email confirming Tarrant County was not asserting jurisdiction. The court commented: "so that's the end of that. So we are asserting jurisdiction in California."

At the August 2022 adjudication hearing, the court reported: "Texas has already relinquished jurisdiction to California. I had received a written response from my counterpart in Texas, and they are not assuming jurisdiction and it is within the California court." The California court and the Texas court thus directly communicated with each other about this issue.

The father notes the Family Code allows California courts to communicate with courts of other states but generally requires a record of substantive communications, notice to the parties, and access to the communications. (See § 3410.) The father failed to show the court did not comply with these provisions. (See *Jameson v. Desta* (2018) 5 Cal.5th 594, 608–609 [we presume the judgment is correct; appellant bears the burden of demonstrating error].) The court alerted the parties it had a written communication from its counterpart in Texas regarding jurisdiction. Although this communication is not in our record,

4

we do not infer error from its absence. (*See id.* at p. 609 [appellate court makes all presumptions in the trial court's favor absent a contrary showing in the record.)

Finally, in *July 2023*, the father asked this court to augment the appellate record to include a *June 2022* filing by the Office of the Texas Attorney General entitled "Suit for Modification of Support Order and Motion to Confirm Support Arrearage." We grant the request. The petition asserts the Texas court has "continuing jurisdiction" of the children because of prior proceedings. This pleading does not demonstrate the Texas court had *exclusive* jurisdiction regarding *custody* at that time. Nor does it demonstrate the California court erred when it ruled it had jurisdiction under the UCCJEA. (See *A.M.*, *supra,* 63 Cal.App.5th at p. 350 [UCCJEA covers custody and visitation disputes]; § 3402, subd. (c) [child custody determination "does not include an order relating to child support or other monetary obligation of an individual"].)

## II

The Department argues any issue regarding ICWA is moot because the juvenile court returned the children to the mother's custody at a recent review hearing. The Department asks us to receive the relevant minute orders from February 2023 as additional evidence and notes they are proper for judicial notice.

The father opposes this request, arguing we may consider such evidence only in "exceptional circumstances," and California courts are divided over the propriety of considering postjudgment evidence to resolve an ICWA issue on appeal.

The father's argument is incorrect. We routinely take judicial notice of juvenile court decisions, including placement orders, postdating challenged rulings in dependency proceedings.

5

Indeed, "dependency counsel have a duty to bring to the appellate court's attention postappellate rulings by the juvenile court that affect whether the appellate court can or should proceed to the merits." (*In re N.S.* (2016) 245 Cal.App.4th 53, 57.)

What courts have divided over is whether it is proper to consider postjudgment evidence—such as declarations of counsel or new social services agency reports—regarding remedial efforts to comply with ICWA. (Compare, e.g., *In re Kenneth D.* (2022) 82 Cal.App.5th 1027, 1034, review granted Nov. 30, 2022, S276649 [augmented record showed the Department conducted an appropriate ICWA inquiry after termination of parental rights] with *In re M.B.* (2022) 80 Cal.App.5th 617, 627–628 ["a child protective services agency cannot remedy a defective ICWA investigation by conducting further interviews while the termination order is being reviewed on appeal"].) That is the issue pending before the Supreme Court. That issue is not present here.

Contrary to the father's arguments, *In re Zeth S.* (2003) 31 Cal.4th 396 (*Zeth*) does not mandate denying the Department's request. There our Supreme Court disapproved of appellate courts routinely "solicit[ing] postjudgment evidence in order to reopen and reconsider trial court findings and reverse the trial court judgment." (*In re Josiah Z.* (2005) 36 Cal.4th 664, 676 [citing *Zeth*, *supra*, 31 Cal.4th at p. 413]; see also *ibid.* [the vice condemned in *Zeth* was an appellate court's "use of new evidence outside the record to second-guess the trial court['s] resolution of issues properly committed to it by the statutory scheme"].) We are doing nothing of the sort and therefore grant the Department's motion.

We further agree with the Department that the court's orders returning the children to the mother moots the ICWA issue. (See *In re A.T.* (2021) 63 Cal.App.5th 267, 274–275 [parental placement renders ICWA inapplicable]; see also *In re Austin J.* (2020) 47 Cal.App.5th 870, 881 fn. 5. (*Austin J.*).)

The father acknowledges this issue is "temporarily" moot but asks us to exercise our discretion to address the merits because the new custody orders are not final orders, the dependency proceeding is ongoing, and the controversy may arise again. We decline. (See *In re D.P.* (2023) 14 Cal.5th 266, 286–287 [in deciding whether to exercise discretion to review a moot appeal, courts should be guided by the overarching dependency goals of providing maximum safety and protection for children, preserving the family, and furthering the child's well-being].)

The father has not demonstrated "there is a reasonable probability that issues concerning ICWA compliance will arise again." (*Austin J., supra*, 47 Cal.App.5th at p. 881 fn. 5.) No one asserts the Department seeks removal anew. Should ICWA come into play in the future, we are confident the juvenile court and the Department will comply with their duties of inquiry as to the father's family, particularly given the Department's concessions on appeal. Both the Department and the court would be under a continuing duty to inquire about the child's status as an Indian child should removal proceedings restart. (Cal. Rules of Court, rule 5.481(a); Welf. & Inst. Code, § 224.2, subd. (a).) ///

7

**DISPOSITION**

We dismiss the father's appeal as to his ICWA challenge and affirm the juvenile court's jurisdiction and disposition orders.



WILEY, J.


We concur:



STRATTON, P. J.



VIRAMONTES, J.