Filed 5/16/23  In re Jayden L. CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| In re JAYDEN L. et al., Persons Coming Under the Juvenile Court Law. | B317448 <br><br> (Los Angeles County Super. Ct. No. 21CCJP03607A-C) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> VANESA N. et al., <br><br> Defendants and Appellants. | |

APPEAL from orders of the Superior Court of Los Angeles County, Mary E. Kelly, Judge.  Appeal dismissed.

Richard L. Knight, under appointment by the Court of Appeal, for Defendant and Appellant Vanesa N.

David M. Thompson, under appointment by the Court of Appeal, for Defendant and Appellant Tariq L.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Tracey M. Blount, Senior Deputy County Counsel, for Plaintiff and Respondent.

_____

Vanesa N. and Tariq L., the parents of now-two-year-old Havery L., six-year-old Alyna L. and nine-year-old Jayden L., appeal the jurisdiction findings on which the juvenile court based its disposition orders declaring the children dependents of the juvenile court and placing the children under the supervision of the Los Angeles County Department of Children and Family Services while allowing them to remain in the home with family maintenance services. Before Vanesa and Tariq filed their opening briefs, the juvenile court terminated its jurisdiction and released the children to their parents, finding the conditions that had justified the initial assumption of jurisdiction under Welfare and Institutions Code section 300[1] no longer existed and were not likely to exist with the withdrawal of court supervision.

The juvenile court's termination of jurisdiction moots this appeal: We cannot provide either parent with effective relief—that is, relief that "'can have a practical, tangible impact on the parties' conduct or legal status.'" (*In re D.P.* (2023) 14 Cal.5th 266, 277.) Nonetheless, contending that the juvenile court's adverse jurisdiction findings could prejudice her in future dependency or family law proceedings—speculative claims of potential future harm the Supreme Court expressly held were not sufficient to avoid mootness (*id.* at p. 278)—and that the appeal concerns issues of broad public interest capable of repetition,

_____

[1]     Statutory references are to this code unless otherwise stated.

Vanesa urges us to exercise our discretion to decide the merits of the moot appeal.[2] We decline to do so and dismiss the appeal.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *Havery's Injuries*

Vanesa was bathing seven-month-old Havery on the morning of June 19, 2021 when she found a "soft spot" on the child's head. Vanesa took Havery to a hospital for a medical examination. A CT scan showed the child had sustained a right parietal linear fracture and a right parietal subdural hematoma. An unnamed source reported to the Department that Havery's injuries were typical when a child falls. Havery's condition was stable, and her injuries were anticipated to heal on their own. Havery was discharged from the hospital on June 22, 2021.

Vanesa could not explain how Havery had sustained her injuries. She indicated Havery generally liked to throw her head backward and suspected that may have caused the injuries, even though no one had noticed the child hit her head.

Vanesa had last bathed the child on June 17, 2021 and had not felt any soft spots that day. The next day Vanesa had again been home with Havery; but, because Vanesa had to pick up the other two children, the paternal grandmother had watched the child for a few hours. The paternal grandmother did not mention any falls or accidents to Vanesa, and Vanesa denied there were any incidents that could have caused the injuries while Havery

---

[2] Tariq filed an opening brief joining Vanesa's argument regarding mootness and her request that we exercise our discretion to consider the merits of her appeal even if moot, but presented no additional grounds that would justify our doing so.

was in her care that day.[3]  Vanesa noticed the soft spot the following morning.

For his part, Tariq did not know how Havery sustained her injuries.   He told the Department's caseworker interviewing him on June 21, 2021 that he was not going to make up a story to appease medical professionals or the Department.  Tariq said he had called Havery and Alyna's day care facility, which did not report any fall having occurred.[4]

The physician from the child abuse and prevention team who saw Havery opined the injuries could have resulted from a fall, an accidental drop or the child being hit or shaken, but added it was difficult to determine if there was any abuse because the parents had no explanation for what happened.  In his clinic notes attached to a Department report, the doctor stated, "At this time there is no accidental trauma history to explain this injury, therefore we cannot rule out inflicted trauma as the cause."  He also stated a report should be made to the Department for concerns of "possible inflicted trauma."

The Department believed the parents' conduct exhibited general neglect of the children because of circumstances that

---

[3]     When interviewed by the Department, the paternal grandmother said she watched Havery for four hours on Friday afternoon, June 18, 2020, while Vanesa picked up Jayden and Alyna from school.  Havery was fine during that time.  The paternal grandmother did not know what could have happened to the child.

[4]     A Department social worker reported the camera at Havery's day care facility did not show her falling or an accident.  The day care director similarly denied Havery's injuries had occurred at the facility.

included the lack of any explanation for Havery's injuries; the child abuse doctor's inability to rule out inflicted trauma and a concern he had raised about the parents sending Havery back to the same day care facility where the injuries may have occurred; the parents declining a visit by a public health nurse despite the seriousness of Havery's injuries; and Tariq's ongoing and excessive marijuana use.

2. *Tariq's Substance Abuse*

The juvenile court sustained a dependency petition in 2015 and removed Jayden from Vanesa and Tariq's care based on Tariq's use of both methamphetamine and marijuana, Vanesa's unresolved history of illicit drug use and its findings that the parents had been under the influence of illicit drugs while Jayden was in their care and that their drug use rendered Vanesa and Tariq incapable of providing regular care and supervision of the child.  The court terminated its jurisdiction in this prior proceeding in January 2017 after Jayden had been returned home and Vanesa and Tariq successfully completed their court-ordered programs.

During the Department's investigation following the report of Havery's injuries in June 2021, Vanesa acknowledged Tariq smoked marijuana "in the morning, before work, and at night," and sometimes kept marijuana in his car or his "safe box." Although Tariq might "take a hit three times a day of his pen," Vanesa believed Tariq did not smoke much, and she expressed no concern about his marijuana use.  She insisted Tariq did not use marijuana when he took care of the children.

During interviews with Department caseworkers, Tariq stated he smoked marijuana "a couple times a day," explaining he smoked it "in the morning, after work, and at night."  He also

5

admitted he sometimes used marijuana when going to the store, being out with friends or taking a walk.  He denied using the drug around the children or being under the influence of the drug while he was responsible for them.  Despite his daily marijuana use, Tariq believed marijuana was not a necessity for him and that he could stop at any time.  He denied having a marijuana addiction and thought he did not smoke marijuana "that much."

Drug tests on June 24, 2021, taken at the request of the Department, showed Tariq was positive for marijuana and negative for other substances.  Vanesa was negative for all substances.  Asked several months later whether he was willing to test again to ensure his marijuana levels were low and there was no need for concern, Tariq declined in the absence of a court order.

### 3. *The Sustained Dependency Petition*

The Department filed a nondetention petition in August 2021 alleging in identical language pursuant to section 300, subdivisions (a) (serious physical harm inflicted nonaccidentally), (b)(1) (failure to protect) and (j) (abuse of sibling) that Havery was medically examined, hospitalized and diagnosed with an endangering condition, a right parietal linear fracture with minimal right subdural hematoma, and that the parents did not explain how the child sustained the injuries, which were concerning for nonaccidental trauma and would not ordinarily occur except as the result of "deliberate, unreasonable and neglectful acts" by the parents, who had care, custody and control of the child.  Separate counts in the petition alleged pursuant to section 300, subdivisions (b)(1) and (j), Tariq had a history of substance abuse, including methamphetamine and marijuana use, and was at the time a current abuser of marijuana, which

6

rendered him incapable of providing regular care and supervision of the children; Tariq had a positive toxicology screen for marijuana on June 24, 2021; Alyna and Havery were of such young age as to require constant care and supervision; Tariq's substance abuse interfered with providing the children regular care; Jayden was a prior dependent of the juvenile court due to Tariq's substance abuse; and Vanesa knew of Tariq's substance abuse and failed to protect the children by allowing Tariq to reside in the children's home and have unlimited access to them.

At the jurisdiction hearing on December 21, 2021 the juvenile court dismissed the section 300, subdivision (a), count alleging Havery's injuries had been inflicted nonaccidentally, indicating it did not find the child's injuries to be either deliberately or intentionally caused, but sustained the subdivision (b)(1) and (j) counts that alleged the injuries resulted from the parents' unreasonable and neglectful acts.[5] The court also sustained the subdivision (b)(1) and (j) counts regarding Tariq's substance abuse and Vanesa's failure to adequately protect the children by allowing Tariq unlimited access to them.

---

[5] As is frequently the case, the Department used identical language—Havery's injuries resulted from the parents' "deliberate, unreasonable and neglectful" acts—to inconsistently allege that the parents inflicted Havery's injuries nonaccidentally within the meaning of section 300, subdivision (a), and that her injuries were the consequence of the parents' neglect (failure to protect) under section 300, subdivision (b)(1), which also placed Havery's siblings at risk under section 300, subdivision (j). Because the court dismissed the subdivision (a) count alleging nonaccidental infliction of serious physical harm, we construe its order sustaining the petition to have struck the word "deliberate" from the sustained findings.

7

Explaining its findings the court stated, "I agree that [Havery's injuries] might not be deliberate or intentional, but I don't understand why it wouldn't be neglectful because the parents—in the court's view, this is exactly why we don't want parents smoking pot while they're taking care of children. . . . [T]he court's concern is . . . that—you know, rather than intention or deliberate, that they did something to crack the kid's head open, there's certainly no evidence of that, but it certainly could have been neglectful in the court's view."

At the disposition hearing the same day the court determined there was insufficient evidence to remove the children and left them in their parents' physical custody under the Department's supervision. The court ordered, for both parents, family maintenance services and participation in a developmentally appropriate parenting program with family preservation, and for Tariq random or on-demand drug testing.

## DISCUSSION

1. *Moot Dependency Appeals and Our Discretion To Decide Them*

The Supreme Court earlier this year in *In re D.P.*, *supra*, 14 Cal.5th 266 explained the mootness doctrine and confirmed it applied to dependency appeals: "A court is tasked with the duty "'to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it.'" [Citation.] A case becomes moot when events "'render[] it impossible for [a] court, if it should decide the case in favor of plaintiff, to grant him any effect[ive] relief.'" [Citation.] For relief to be 'effective,' two requirements must be met. First, the

8

plaintiff must complain of an ongoing harm.  Second, the harm must be redressable or capable of being rectified by the outcome the plaintiff seeks." (*Id.* at p. 276.)

In *In re D.P.*, the juvenile court had terminated its jurisdiction without issuing any order that continued to impact the parents.  (*In re D.P.*, *supra*, 14 Cal.5th at p. 277.)  In that context, the Court held, "relief is effective when it 'can have a practical, tangible impact on the parties' conduct or legal status.' [Citation.]  It follows that, to show a need for effective relief, the plaintiff must first demonstrate that he or she has suffered from a change in legal status.  Although a jurisdictional finding that a parent engaged in abuse or neglect of a child is generally stigmatizing, complaining of 'stigma' alone is insufficient to sustain an appeal.  The stigma must be paired with some effect on the plaintiff's legal status that is capable of being redressed by a favorable court decision." (*Ibid.*)  The Court gave as examples of nonmoot challenges to jurisdiction findings cases in which a jurisdiction finding affected parental custody rights, curtailed a parent's contact with his or her child or resulted in disposition orders that continued to adversely affect a parent.  (*Id.* at pp. 277-278.)  The Court expressly held, disapproving contrary case law, that "speculative future harm" is not sufficient to avoid mootness.  (*Id.* at p. 278.)[6]

---

[6]     Specifically addressing the appellant father's argument that the challenged jurisdiction finding of neglect could result in his inclusion in California's Child Abuse Central Index (CACI) (Pen. Code, § 11170), which carries several legal consequences, the Supreme Court noted that, when a child protective agency forwards a substantiated report of abuse or neglect to the California Department of Justice for inclusion in CACI, it must provide written notice to the person whose conduct was reported.

9

Despite its reaffirmation of the applicability of the mootness doctrine to dependency appeals, the Supreme Court emphasized that, even when a case is moot, courts may exercise their "inherent discretion" to reach the merits of the dispute. (*In re D.P.*, *supra*, 14 Cal.5th at p. 282.) That discretion, the Court explained, is generally exercised only when the case presents an issue of broad public interest that is likely to recur, when there may be a recurrence of the controversy between the parties or when a material question remains for the court's determination. (*Ibid.*)

Nevertheless, because features of dependency proceedings tend to make appeals prone to mootness problems, the Court, without intending to be exhaustive, identified several additional factors for the courts of appeal to evaluate when deciding whether discretionary review of a moot case may be warranted outside of those instances. (*In re D.P.*, *supra*, 14 Cal.5th at pp. 284-286.) First, a court may analyze whether the challenged jurisdiction finding could potentially impact the current or future dependency proceedings, for example, by influencing the child protective agency's decision to file a new dependency petition or the juvenile court's determination about further reunification services. (*Id.* at p. 285.) Second, a court may take into account the nature of the allegations against the parent: "The more egregious the findings against the parent, the greater the

---

(*In re D.P.*, *supra*, 14 Cal.5th at p. 279.) Absent evidence in the record that any such report had been submitted or a showing that the type of neglect allegation at issue in the case ("general neglect," rather than "severe neglect") was even reportable, the Court held, "Father's CACI claim is too speculative to survive a mootness challenge." (*Id.* at p. 280.)

parent's interest in challenging such findings." (*Id.* at p. 286.) Third, a court may consider whether the case became moot due to prompt compliance by parents with their case plan: "It would perversely incentivize noncompliance if mootness doctrine resulted in the availability of appeals from jurisdictional findings only for parents who are less compliant or for whom the court has issued additional orders." (*Ibid.*)

### 2. *Discretionary Review of This Moot Appeal Is Not Warranted*

The juvenile court terminated its jurisdiction with a simple order releasing Jayden, Alyna and Havery to their parents. No custody or visitation orders were made, nor did the court issue any other order with continuing effect or that directly impacted Vanesa's or Tariq's legal status. The claims of possible future harm—all entirely speculative[7]—are insufficient to avoid mootness. (*In re D.P.*, *supra*, 14 Cal.5th at p. 278.)

---

[7] In addition to asserting the adverse jurisdiction findings might prejudice her in future dependency or family law proceedings, Vanesa contends, without elaboration, that the findings could negatively impact her employment because the Department will be required to make a CACI report to the California Department of Justice. As discussed, however, if the Department had forwarded a substantiated report of abuse to the California Department of Justice for inclusion in CACI, it would have provided written notice to Vanesa. (See *In re D.P.*, *supra*, 14 Cal.5th at p. 279.) But Vanesa does not claim, let alone show, that any report was submitted, nor does she identify any current or future employment opportunity a CACI listing would jeopardize. As in *In re D.P.*, the CACI claim is "too speculative to survive a mootness challenge." (*Id.* at p. 280.)

Although Vanesa and Tariq's appeal was mooted by an order terminating the juvenile court's jurisdiction entered only nine months after the dependency petition was filed, indicating that, despite some initial reluctance, they had fully complied with their case plans, no other factor justifies the exercise of our discretion to consider the merits of their moot appeal. (See *In re D.P.*, *supra*, 14 Cal.5th at p. 286 ["no single factor is necessarily dispositive of whether a court should exercise discretionary review of a moot appeal"].) First, the findings against Vanesa and Tariq were not egregious. The juvenile court dismissed the count alleging Havery had been the victim of nonaccidental infliction of serious physical injury, sustaining only the failure-to-protect counts relating to Havery's injuries and Tariq's extensive use of marijuana and the related sibling-endangerment counts. In the context of sustained dependency petitions, none of those sustained counts suggests either parent was guilty of such severe misconduct as to justify the consideration of a moot appeal.

More significantly, the historical facts underlying the jurisdiction findings are not in dispute. Infant Havery suffered serious injuries while in the custody of Vanesa and Tariq; they provided no explanation (innocent or otherwise) of what took place; and nothing in the record supported an inference the injuries occurred while Havery was at the childcare facility or being watched by her grandmother. And Tariq admitted to frequent daily use of marijuana. While the parents challenged the juvenile court's conclusion these facts created a substantial risk of serious physical harm for their young children, as necessary under section 300, subdivisions (b)(1) and (j), even if we were to agree and reverse one or more of those findings, the negative information that was the evidentiary basis for those

conclusions would be available to the Department or the court in any future dependency or family law proceedings. (See, e.g., *In re N.S.* (2016) 245 Cal.App.4th 53, 63 [even if the court were to reverse the juvenile court's jurisdiction findings, the underlying facts that N.S.'s parents were arrested twice in connection with activity at a home that was a marijuana grow house "would almost certainly be available in any future dependency proceedings, as would the facts that Mother moved out of the grow house, took prompt and positive steps to reunite with N.S., and quickly regained custody of her child"].)

Finally, contrary to Vanesa's argument in her reply brief, this fact-specific appeal presents no issue of broad public interest. (See *In re Rashad D.* (2021) 63 Cal.App.5th 156, 159 [fact-specific question whether the mother's current circumstances created a substantial risk of serious physical harm to her young son is the type of issue presented to appellate courts multiple times every year]; *In re M.C.* (2011) 199 Cal.App.4th 784, 802 [deciding issues of statutory interpretation and separation of powers despite mootness, but declining to address whether sufficient evidence supported juvenile court order because that was "not an issue of continuing public importance"].)

## DISPOSITION

Vanesa and Tariq's appeal is dismissed as moot.

PERLUSS, P.J.

We concur:

SEGAL, J.

FEUER, J.