Filed 9/15/23  In re O.L. CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re O.L., Jr. et al., Persons Coming Under the Juvenile Court Law. | B317745, B319864, B323402 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>M.R.,<br><br>Defendant and Appellant. | (Los Angeles County Super. Ct. No. 20CCJP02055A-B) |

APPEAL from orders of the Superior Court of Los Angeles County, Debra Archuleta, Judge.  Dismissed.

Sean Angele Burleigh, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and William D. Thetford, Principal

Deputy County Counsel, for Plaintiff and Respondent Los Angeles County Department of Children and Family Services.

Paul A. Swiller, under appointment by the Court of Appeal, for Respondent O.L.

M.R. (Mother) and O.L. (Father) are the parents of two children: a son O.L., Jr. (O.L.), and a daughter A.R. (collectively, Minors).[1]  The juvenile court assumed dependency jurisdiction over Minors, finding they were at risk of emotional harm as a result of their parents' ongoing custody dispute, and removed Minors from Father's care.  Mother at first urged the court to award her sole legal and physical custody and terminate jurisdiction (a so-called "exit order"), but the court declined and ordered the parents to share custody during dependency proceedings that would ensue.  Mother and Father then jointly asked the court to issue an exit order awarding the parents joint custody of the minors and the juvenile court agreed.  In this consolidated appeal, we consider whether Mother can properly challenge the initial custody and jurisdiction orders the juvenile court made before agreeing to terminate jurisdiction.  We also decide whether Mother is aggrieved by the exit order the court ultimately entered at her request (jointly with Father).

## I.  BACKGROUND

### A. *The Dependency Petition, Jurisdiction, and Disposition*

Mother and Father separated in June 2015.  Four years later, pursuant to a family law order, Mother and Father were awarded joint legal and physical custody of their children.  Although Minors resided primarily with Mother, the family court's order provided for frequent overnight visits with Father.

---

[1]     At the time the dependency petition was filed, O.L. was five years old and his sister A.R. was four years old.

3

In April 2020, the Los Angeles County Department of Children and Family Services (the Department) filed a petition alleging Minors were at substantial risk of suffering emotional harm due to their parents' continued disputes over child custody. The petition specifically alleged Father made repeated accusations that Minors were being abused and neglected while in Mother's home, which led to the children being subjected to numerous interviews with social workers, law enforcement officers, and medical professionals and caused Minors to suffer severe anxiety and depression.

At the jurisdiction and disposition hearing, the juvenile court sustained the dependency petition as pled. The court ordered Minors removed from Father's care and released into Mother's home under the Department's supervision; Father was granted monitored visitation.[2]

## B. The Six-Month Review Hearing

In advance of the initial review hearing, the Department informed the juvenile court that both parents were in compliance with their respective case plans. Mother had voluntarily enrolled in a parenting class and Father was consistent in his visitation with Minors. Neither child reported any abuse or physical discipline, social workers had not observed any signs of abuse, and neither Minors' teachers nor their service providers expressed any safety concerns about the children. Nonetheless, the Department reported that more than a dozen anonymous,

---

[2] In an unpublished decision, we upheld the juvenile court's jurisdiction findings and removal order. (*In the Matter of O.L.* (Jun. 24, 2021, B307466) [nonpub. opn.].)

4

unsubstantiated allegations of abuse or neglect had been leveled against Mother and/or her live-in partner H.H. (Stepfather) since the adjudication and disposition hearing.

Although Minors were doing well in therapy, their therapist believed it was difficult for them to process their trauma due to the ongoing abuse referrals and resulting investigations.[3] Because Minors were bonded to Mother and "safe and stable" in her home, and because the risk of emotional harm was "high" due to Father's inability to understand why Minors had been removed from his care, the Department recommended the juvenile court terminate jurisdiction with an order giving Mother sole legal and physical custody of Minors and limiting Father to monitored visitation.

At the six-month review hearing, held in July 2021, the juvenile court maintained dependency jurisdiction over Minors. The court ordered the Department to continue monitoring Father's visits but gave it the discretion to "liberalize to unmonitored." Mother objected to the court's decision to maintain jurisdiction over Minors.

### C.    *The 12-Month Review Hearing*

In the period between the six-month and 12-month review hearings, the Department reported both parents were in compliance with their court-ordered case plans and Minors appeared bonded with each of their parents. Minors described Mother's home as loving and safe and characterized their

---

[3]    Father's therapist opined that she did not believe Father was making the anonymous referrals; she thought it might be his mother.

relationship with Mother and Stepfather as a family. Following the liberalization of Father's visitation from monitored to unmonitored, Minors reported enjoying their time with Father and the Department did not report any safety or other concerns when it made an unannounced visit to Father's home.

Because Father continued to deny that he had been emotionally abusive to his children prior to the commencement of dependency proceedings, the Department recommended the juvenile court terminate jurisdiction with an order granting Mother sole legal and physical custody of Minors with unmonitored visits for Father, including overnight visits. The juvenile court held the 12-month review hearing in December 2021 and—over objections by Mother and the Department—rescinded its home-of-the-mother custody order and replaced it with a home-of-parents order which it characterized as "temporary." The court continued the remainder of the review hearing to a later date and Mother noticed an appeal from the court's home-of-parents custody order (one of three consolidated appeals currently before us).[4]

At the resumed hearing, held in February 2022, the Department once again urged the juvenile court to terminate jurisdiction. Regarding custody, the Department recommended the court give sole legal custody of Minors to Mother but order joint physical custody. Mother and Father agreed with the Department's recommendation for joint physical custody and urged the court to terminate jurisdiction. Minors' counsel, however, argued for continued jurisdiction, contending the

---

[4]     Mother did not seek supersedeas relief in this court in connection with any of the appeals she noticed.

6

parents' persistent inability to co-parent effectively was endangering the children's emotional well-being.

The juvenile court declined to terminate jurisdiction and maintained the home-of-parents order in "full force and effect." Mother noticed an appeal from the juvenile court's ruling (the second appeal before us).

### D. The 18-Month Review Hearing

In advance of the 18-month review hearing, the Department reported Mother and Father, through mediation, had reached an agreement on shared physical custody, including a holiday schedule. The Department also related that in the interval since the 12-month review hearing it received a number of referrals regarding abuse of Minors by Mother and/or Stepfather, all of which proved to be false. Minors' therapist believed they continued to display "symptoms and behaviors of concern" but had made "positive progress" toward their treatment goals. The Department recommended jurisdiction be terminated with the parents sharing legal and physical custody.

The juvenile court held the 18-month review hearing in July 2022. All parties were in favor of the parents sharing legal and physical custody. Mother, Father, and the Department also urged the court to terminate jurisdiction. Mother's attorney explained, "Today, the parents are in agreement to share joint legal and physical custody. [¶] . . . [¶] These parents have figured out how to [co-parent] together and effectively."

In view of parents' agreement on custody and visitation and the progress Minors were making in therapy, the juvenile court found continued jurisdiction was unnecessary. Several days later, the court signed a "Custody Order—Juvenile—Final

Judgment," which incorporated the parents' mediation agreement on visitation, terminated dependency jurisdiction, and released Minors to their parents.

Mother noticed an appeal from the juvenile court's order terminating jurisdiction. That is the third of the three appeals that have been consolidated and are currently before us for resolution.

## II. DISCUSSION

Dismissal of this consolidated appeal is required. As to the December 2021 home-of-parents order and the February 2022 order maintaining dependency jurisdiction over Minors, we cannot grant Mother any effective relief at this point. These orders have been mooted by the court's later July 2022 exit order. And as to Mother's appeal from that order, she has no standing to appeal because she is not aggrieved; Mother expressly and repeatedly urged the court to issue the order it did.

### A. *Mother's Appeals of the Home-of-Parents Order and the Order Continuing Jurisdiction at the 12-Month Review Hearing Were Mooted by Subsequent Events*

"A case becomes moot when events "'render[ ] it impossible for [a] court, if it should decide the case in favor of plaintiff, to grant him any effect[ive] relief.'" [Citation.]" (*In re D.P.* (2023) 14 Cal.5th 266, 276; accord, *In re Rashad D.* (2021) 63 Cal.App.5th 156, 163 ["'the critical factor in considering whether a dependency appeal is moot is whether the appellate court can provide any effective relief if it finds reversible error'"].) "In th[e dependency] context, relief is effective when it 'can have a practical, tangible impact on the parties' conduct or legal status.'

8

[Citation.] It follows that, to show a need for effective relief, the plaintiff must first demonstrate that he or she has suffered a change in legal status." (*D.P., supra*, at 277; see also *id.* at 276 ["For relief to be 'effective,' two requirements must be met. First, the plaintiff must complain of an ongoing harm. Second, the harm must be redressable or capable of being rectified by the outcome the plaintiff seeks"].) In other words, a parent must "demonstrate[ ] a specific legal or practical consequence that would be avoided upon reversal" in order for the dependency appeal to not be moot and warrant merits review. (*Id.* at 283.)

"Juvenile dependency appeals raise unique mootness concerns because the parties have multiple opportunities to appeal orders even as the proceedings in the juvenile court proceed." (*In re N.S.* (2016) 245 Cal.App.4th 53, 59; see also *D.P., supra*, 14 Cal.5th at 284 ["the speed with which dependency cases are resolved will often render appeals moot"].) "A reviewing court must "'decide on a case-by-case basis whether subsequent events in a juvenile dependency matter make a case moot and whether [its] decision would affect the outcome in a subsequent proceeding.'" [Citation.]" (*D.P., supra*, at 276.) Even where a dependency appeal is moot, however, "courts may exercise their 'inherent discretion' to reach the merits of the dispute." (*Id.* at 282; see also *id.* at 285-286 [enumerating considerations to guide decisions on whether to exercise discretion to reach the merits].)

Mother's challenges to the December 2021 home-of-parents order and the February 2022 order continuing jurisdiction were rendered moot by the juvenile court's subsequent exit order in July 2022 terminating jurisdiction and returning Minors to the custody and care of both parents. Mother did not suffer any adverse change in legal status from either the December 2021 or

9

February 2022 order.  Throughout the dependency proceedings, Mother never lost physical custody of her children.  Because we cannot grant Mother any effective relief, her appeals of the December 2021 and February 2022 orders are moot.  We have also considered the factors bearing on discretionary review of moot questions as identified in *D.P.*, *supra*, 14 Cal.5th 266, and we believe there is no good reason to exercise our discretion to decide the moot issues.

### B.    Mother Is Not Aggrieved by the Termination of Jurisdiction

"[O]nly a person aggrieved by a decision may appeal."  (*In re K.C.* (2011) 52 Cal.4th 231, 236; see also Code Civ. Proc., § 902 ["Any party aggrieved may appeal in the cases prescribed in this title"].)  This rule applies with "full force to appeals from dependency proceedings."  (*K.C. supra*, at 236; accord, *In re D.S.* (2007) 156 Cal.App.4th 671, 673-674 [father's "ability to appeal does not confer standing to assert issues when he is not aggrieved by the order from which the appeal is taken"]; *In re Carissa G.* (1999) 76 Cal.App.4th 731, 734 [to have standing to appeal a dependency court order, a parent must "establish he or she is a 'party aggrieved' to obtain a review of a ruling on its merits"].)

"To be aggrieved or affected, a parent must have a legally cognizable interest that is affected injuriously by the juvenile court's decision."  (*D.S.*, *supra*, 156 Cal.App.4th at 674; accord, *K.C.*, *supra*, 52 Cal.4th at 236; *Carissa G.*, *supra*, 76 Cal.App.4th at 734.)  "Standing to challenge an adverse ruling is not established merely because a parent takes a position on an issue that affects the minor [citation]; nor can a parent raise the minor's best interest as a basis for standing [citation].  Without a

showing that a parent's personal rights are affected by a ruling, the parent does not establish standing." (*D.S.*, *supra*, at 674.)

Mother was not aggrieved by the juvenile court's exit order. The exit order terminated jurisdiction (something Mother had long urged the court to do) and it did so on terms that restored the status quo as it existed at the time the dependency proceedings were commenced, i.e., joint legal and physical custody (something Mother had also urged). Mother's rights, in other words, were not adversely affected by the exit order. Whatever its merit, her argument that the restoration of joint custody was not in Minors' best interests is beside the point. (*D.S.*, *supra*, 156 Cal.App.4th at 674; accord, *Carissa G.*, *supra*, 76 Cal.App.4th at 736.)

## DISPOSITION

The consolidated appeals are dismissed.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

BAKER, J.

We concur:

RUBIN, P. J.

KIM, J.