Filed 2/25/25  In re J.S. CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re J.S., a Person Coming Under the Juvenile Court Law. | B332951 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>JUAN S.<br><br>Defendant and Appellant. | (Los Angeles County Super. Ct. No. 23CCJP02253A) |

APPEAL from an order of the Superior Court of Los Angeles County, Cathy J. Ostiller, Judge.  Dismissed.

Mansi Thakkar, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, and Jacklyn K. Louie, Principal Deputy County Counsel, for Plaintiff and Respondent.

Juan S. (Father) appeals from a dependency jurisdiction finding made after he used methamphetamine while participating in a voluntary services program. He was participating in that program as a result of an earlier episode when he was high on methamphetamine and abused his son J.S.'s mother while holding the child. During the pendency of this appeal, the juvenile court terminated jurisdiction and returned J.S. to the custody of his parents. We are nevertheless asked to decide whether the jurisdiction finding and associated disposition order are supported by sufficient evidence.

I

In December 2022, Father was under the influence of methamphetamine and hallucinating and hearing voices while holding then 22-month-old J.S. J.S.'s mother, J.P. (Mother), tried to take J.S. out of Father's arms and he slapped her in the face. Mother then walked to another room in the home, Father pursued her, and Father (after putting J.S. down) bit Mother on the face and choked her. Mother called the police, and the Los Angeles County Department of Children and Family Services (the Department) was notified.

Mother told the Department that Father had been using methamphetamine and she had been trying to get him help to stop. Father admitted to a social worker that he had been under the influence of methamphetamine when he abused Mother. Mother told the Department that was not the only time she called the police because of Father's methamphetamine use and "bizarre" behavior; there were at least six prior occasions.

Mother and Father agreed to a voluntary family maintenance plan with the Department as a result of the

2

methamphetamine-fueled domestic violence incident. Father was referred to participate in drug treatment and individual counseling, but domestic violence services were not part of the plan because an "ER worker" determined that Father's violent behavior was attributable only to his methamphetamine use. The voluntary family maintenance plan began in February 2023 and was scheduled to end in August of that same year. A Department representative informed Father that if he tested positive for drug use during the plan period, the Department would file a dependency petition in juvenile court.

Father tested negative for drug use multiple times in the initial months of the voluntary family maintenance plan. In June 2023, however, Father tested positive for use of methamphetamine. A social worker interviewed Father after the positive test, and he admitted to using methamphetamine. Father told the social worker that he met a friend (who Father knew to be a methamphetamine user) while Mother and J.S. were out of town, the friend offered Father methamphetamine, Father initially declined, but then, after the friend "insisted," Father agreed to take a "'hit.'" Father told the social worker that his relapse was a "moment of 'weakness'" that wouldn't happen again, and he said he would deserve whatever is coming in dependency proceedings because he was told "plenty of times about what could happen if [he] relapse[d]."

A social worker also interviewed Mother after the positive test. She said she was shocked by Father's relapse and upset at him. Mother told the social worker that if Father continued to relapse, she would give him an "ultimatum" because she did not want to jeopardize custody of her child. Mother also told the

3

social worker that she was working and Father was not, which meant that Father was providing child care most of the time.

In early July 2023, the Department filed a single-count dependency petition alleging J.S. was at substantial risk of serious physical harm as a result of Father's methamphetamine abuse. The Department recommended, however, that J.S. remain in his parents' custody during the ensuing dependency proceedings with supportive services in place. That is the custody order the juvenile court made, with the condition that Father participate in drug testing during the dependency proceedings.

Father thereafter tested negative for methamphetamine use until the jurisdiction and disposition hearing held in September 2023. At the jurisdiction hearing, Father argued the juvenile court should dismiss the dependency petition because he would continue to participate in services and remain sober even if the court withdrew supervision; in other words, there was no current risk to J.S. Father's attorney emphasized he had gained "very clear insight" into his substance abuse problem and deleted contact information saved on his phone for people he knew to be drug users. Minor's counsel and the Department asked the court to sustain the petition as pled. They emphasized Father's positive test just "a few months ago"; Father's "longstanding" methamphetamine use; J.S.'s young age; Father's relapse while the case was being actively supervised by the Department; methamphetamine's highly addictive properties; and the deleterious effect of cutting off Father's interaction with the Department, which by his own admission, had helped him change his behavior.

4

The juvenile court sustained the dependency petition. The court commended Father for his efforts to address his substance abuse problem, but the court found J.S. was still at substantial risk of harm because of the chance that Father could again relapse, particularly in light of other existing and potential stressors in his life. The court also emphasized Father relapsed and used methamphetamine while actively participating in an agreed-to voluntary family maintenance plan. The court found that there was "some more work for this family to do and that court intervention could be helpful here in keeping the family on track and in helping Father address some of these issues that have been obviously troubling him over the past several years and specifically over the past . . . nine months or so."

As to disposition, the court maintained J.S. in his parents' custody. The court ordered that Father participate in services, specifically, a full drug and alcohol program with aftercare, weekly random and on-demand drug and alcohol testing, and individual counseling to address case issues.

## II

Father's appeal from the juvenile court's orders argues (1) insufficient evidence supports the court's jurisdiction finding and (2) the court's disposition order was an abuse of discretion because the court should have ordered informal supervision of the family (again) and refrained from requiring drug treatment and weekly testing. At Father's request, this court has taken judicial notice that while this appeal has been pending, the juvenile court

has terminated dependency jurisdiction and, in doing so, has not disturbed its prior order keeping J.S. in his parents' custody.[1]

Termination of jurisdiction and return of J.S. to his parents' custody moots this entire appeal, not just the disposition aspect as argued by the Department; reversing the orders Father challenges would have no practical effect.[2] (*In re D.P.* (2023) 14 Cal.5th 266, 276; *In re N.S.* (2016) 245 Cal.App.4th 53, 60 ["the critical factor in considering whether a dependency appeal is moot is whether the appellate court can provide any effective relief if it finds reversible error"].) We do not discuss why Father's arguments fail on the merits because we have considered the factors our Supreme Court outlined in *D.P.* and we decline to exercise our discretion to resolve the moot questions presented.

---

[1] The Department's October 18, 2024, motion for judicial notice is also granted.

[2] Not only would a reversal have no practical effect because the juvenile court has already terminated jurisdiction, a reversal would have no practical effect because the documented facts concerning Father's methamphetamine use and domestic violence that gave rise to the voluntary family maintenance plan and that form the bulk of the evidence supporting jurisdiction would be unaffected by a reversal of the jurisdiction and disposition orders.

6

DISPOSITION

The appeal is dismissed as moot.


NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS



BAKER, J.

We concur:



HOFFSTADT, P. J.



KIM (D.), J.