Filed 3/17/25  In re N.A. CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re N.A.,<br><br>A Person Coming Under the Juvenile Court Law.<br><br>_____<br><br>THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>N.A.,<br><br>    Defendant and Appellant. | A168097 / A169061<br><br>(Alameda County Super. Ct. No. JV03376901)<br><br>**ORDER MODIFYING OPINION [NO CHANGE IN JUDGMENT]** |

**BY THE COURT:**

The opinion filed February 24, 2025 is modified as follows:

(1)  Modify footnote 7 on page 11 to the following:

N.A. filed three unopposed motions to augment the record which this court granted.  The motions, however, neglected to specify that they encompassed *postjudgment* evidence or what exceptional circumstances justified our consideration of that evidence.  (*In re Zeth S.* (2003) 31 Cal.4th 396, 405 [absent exceptional circumstances, appellate court should not consider postjudgment evidence].)  This is required regardless of whether the trial court failed to provide notice of any postjudgment orders pursuant to California Rules of Court, rule

1

8.410(b)(2).  We requested and received supplemental briefing from the parties on the extent to which we can consider such postjudgment evidence and whether we have jurisdiction to review any postjudgment orders entered after September 15, 2023.

[This order does not effect a change in the judgment.]

Appellant N.A.'s March 4, 2025 motion for modification is otherwise denied.


CHOU, J.


We concur.


JACKSON, P. J.
SIMONS, J.


2

Filed 2/24/25  In re N.A. CA1/5 (unmodified opinion)

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re N.A.,<br><br>A Person Coming Under the Juvenile Court Law.<br>_____<br><br>THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>v.<br><br>N.A.,<br><br>  Defendant and Appellant. | A168097 / A169061<br><br>(Alameda County Super. Ct. No. JV03376901) |

In this juvenile wardship proceeding under Welfare and Institutions Code[1] section 602, appellant and defendant N.A. admitted committing second degree murder with the use of a deadly weapon.  The juvenile court declared him a ward of the court and placed him in a secure youth treatment facility (Secure Track) under section 875.  The court set the baseline term of confinement at seven years and the maximum term of confinement at 8 years

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise specified.

1

3 months and 17 days, which the court calculated using the date when N.A. would reach the age of 25. The court also awarded precommitment custody credits to N.A.

On appeal, N.A. contends that the juvenile court failed to include these precommitment custody credits in its dispositional order or apply them against his maximum term of confinement. The People concede that N.A.'s custody credits should be recalculated but disagree with his argument that the maximum term of confinement should include a new end date as a result. We agree with the People. The court should have included the precommitment custody credits in its dispositional order and applied them against N.A.'s maximum term of confinement but the maximum term of confinement itself does not change.

N.A. further contends (and the People agree) that the court, on remand, may consider a reduction of his baseline term pursuant to California Rules of Court, rule 5.806.[2] We too agree.

N.A. also contends that his deadly weapon enhancement was dismissed based on the juvenile court's orders. We remand so the court can clarify whether that enhancement was, in fact, dismissed.

Finally, N.A. contends that the juvenile court failed to timely review and approve an individual rehabilitation plan (IRP) that satisfies the requirements of section 875, subdivision (d). In connection with this claim, N.A. asks that we consider postjudgment evidence added to the record pursuant to his motion and appears to suggest that we review postjudgment orders from which he did not appeal. We decline to review those postjudgment orders because we lack the jurisdiction to do so and because

---

[2] Further references to rules are to the California Rules of Court.

2

N.A. now eschews any challenge to the correctness of those orders in his supplemental brief. We do, however, find that one of the postjudgment orders renders N.A.'s appeal on this issue moot.

Accordingly, we reverse in part to permit the recalculation of N.A.'s custody credits and the reconsideration of his baseline term under rule 5.806. On remand, the juvenile court should also clarify whether the special allegation for use of a deadly weapon, which N.A. admitted, was dismissed. We otherwise affirm.

## I. BACKGROUND

A. Facts

These facts are taken from the dispositional report. In July 2021, 14-year-old N.A. was at home having dinner with his parents. He got into a minor argument with them about whether COVID-19 was fake but eventually calmed down. After dinner, the three of them watched television together. N.A.'s father went to bed around 9:00 p.m. and his mother joined him around 11:00 p.m. Shortly thereafter, N.A.'s father woke up to the mother screaming that she had been stabbed. He saw N.A. run from the bedroom to the kitchen with a knife in his hand saying, " 'I don't want to die.' " After a brief struggle, the father disarmed N.A. The father then went to check on the mother, who had collapsed and had blood on her chest. As the father applied pressure to the mother's wound, he felt a sharp pain in his back and realized that N.A. was stabbing him.

After another struggle, the father disarmed N.A. again, pushed him into the backyard, and called the police. After police officers arrived, they pronounced the mother dead. The father had multiple stab wounds on his back and shoulder and was transported to the hospital, while the police searched for N.A. Less than 15 minutes later, officers found N.A.

approximately one mile from his home, covered in blood.  He was standing in front of someone's house, saying that he just "stabbed his parents because he thought 'they were going to kill him.' "  When officers later interviewed N.A. about what had happened, he stated he felt "stressed out, hopeless, angry, and sad" because he had not talked to his girlfriend in a few days after his parents took his cellphone.  N.A. had no prior criminal history.

B.  <u>Procedural History</u>

On July 19, 2021, the People filed a juvenile wardship petition (§ 602, subd. (a)), alleging that N.A. committed murder (Pen. Code, § 187, subd. (a)), attempted murder (*id.*, §§ 664/187, subd. (a)), and assault with a deadly weapon (*id.*, § 245, subd. (a)(1)).  As to the murder and attempted murder counts, the petition alleged that N.A. used a deadly weapon.  (*Id.*, § 12022, subd. (b)(1).)  As to the attempted murder and assault with a deadly weapon counts, the petition alleged that N.A. inflicted great bodily injury.  (*Id.*, § 12022.7, subd. (a).)  On April 28, 2023, N.A. waived his right to a trial and admitted that he committed second degree murder and used a deadly weapon.  The other counts and allegations were dismissed.

At the May 15, 2023 disposition hearing, the probation department recommended that N.A. be placed in Secure Track.  Defense counsel requested that he be placed in an intensive therapeutic program so that his mental health needs could be addressed.  The juvenile court adjudged N.A. a ward of the court and committed him to Secure Track.  It set the maximum term of confinement at 8 years 3 months and 17 days, to end on N.A.'s 25th birthday.  It set the baseline term of confinement at seven years.  The court further ordered that the probation department and any treatment providers submit an IRP within 30 days pursuant to section 875, subdivision (d) and scheduled a hearing on June 16, 2023 to consider the IRP for N.A.  On

4

June 14, 2023, N.A. timely filed a notice of appeal from the May 15, 2023 dispositional order.

On May 22, 2023, Dr. Daniel Taxy submitted a psychological evaluation of N.A. The evaluation recommended a variety of mental health services and stated that N.A. "may benefit from a secure, residential facility that is supportive and therapeutically focused." On June 8, 2023, the probation department submitted an IRP that did not account for Dr. Taxy's evaluation. At the June 16, 2023 hearing, defense counsel requested and the juvenile court scheduled a section 779.5 hearing. [3] The court took no action with respect to the IRP.

N.A. subsequently filed a section 779.5 motion, arguing that Secure Track could not provide the mental health treatment that he needed because it lacked the necessary therapeutic services and programs. The juvenile court conducted hearings on the motion on August 22, 2023, September 1, 2023, and September 15, 2023. Various witnesses, including Dr. Taxy, testified.

The court denied the motion, reasoning that four months was "simply not enough time for us to say that Secure Track has failed [N.A.]" in light of his latest progress report. The court, however, granted defense counsel's stepdown request and placed N.A. in a less restrictive residential treatment program for a minimum of two years pursuant to section 875,

---

[3] Section 779.5 states, in pertinent part, that "[t]he court committing a ward to a secure youth treatment facility . . . may thereafter modify or set aside the order of commitment upon the written application of the ward or the probation department and upon a showing of good cause that the county or the commitment facility has failed, or is unable to, provide the ward with treatment, programming, and education that are consistent with the individual rehabilitation plan described in subdivision (d) of Section 875 . . . ."

subdivision (f)(1).

On October 27, 2023, the probation department filed a request for detention and asked that N.A.'s stepdown be "set aside" and that "the Secure Track order made on May 15, 2023, be fully reinstated". The request explained that N.A. had "absconded from [the stepped down facility] and refused to return." At the October 30, 2023 detention hearing, the juvenile court ordered that N.A. return to "the Secure Track Program at the Juvenile Justice Center." Defense counsel then asked for a formal hearing on the IRP, but the court responded that it was unnecessary and that counsel could discuss the IRP at the next progress reviewing hearing. On November 2, 2023, N.A. filed a second notice of appeal from the September 15, 2023 order denying his section 779.5 motion.

At the November 14, 2023 progress review hearing, the juvenile court ordered that the IRP incorporate Dr. Taxy's recommendations and that the probation department implement the IRP. At the February 29, 2024 review hearing, the court received a favorable progress report and reduced N.A.'s baseline term by four months. At the August 29, 2024 review hearing, the court further reduced his baseline term by five months. N.A. did not appeal from the court's November 14, 2023, February 29, 2024, or August 29, 2024 orders.

## II. DISCUSSION

A. Calculation of Custody Credits

N.A. argues that the juvenile court failed to include his 676 days of precommitment custody credits in its dispositional order and failed to apply those credits against his maximum term of confinement. He further argues that the court did not award him all of the custody credits, including post-commitment credits, to which he is entitled because the probation

6

department miscalculated those credits in its reports.[4]  The People agree that N.A.'s precommitment custody credits should be applied to his maximum term but contends that those credits should be reduced from 676 days to 669 days.  The People also concede that N.A.'s total custody credits should be recalculated.

We agree with the People's concessions.  "[A] minor is entitled to credit against his or her maximum term of confinement for the time spent in custody before the disposition hearing.  [Citations.]  It is the juvenile court's duty to calculate the number of days earned, and the court may not delegate that duty." (*In re Emilio C.* (2004) 116 Cal.App.4th 1058, 1067.)  As for N.A.'s precommitment credits, errors in the calculation of those credits may be corrected on appeal even if that correction reduces the number of credits and the argument was raised by the People in their respondent's brief.  (See *People v. Duran* (1998) 67 Cal.App.4th 267, 270.)  Indeed, we see no reason not to order those corrections where, as here, the court appeared to make an arithmetic error.  Accordingly, we remand this matter so the court can recalculate N.A.'s precommitment custody credits and apply them to his maximum term and so the court can recalculate his total custody credits.

B.  N.A.'s Maximum Term of Confinement

N.A. contends that his precommitment credits should be applied to shorten his maximum term of confinement.  The juvenile court set N.A.'s maximum term at 8 years 3 months and 17 days.  In doing so, the court used the length of time between the date of N.A.'s disposition hearing and the date when he reached 25 years of age—September 1, 2031.  Because the

---

[4] N.A. contends that his total custody credits should be 1,141 days as of August 29, 2024 whereas the probation report only gave him 1,123 days of credit.

court used those dates to determine his maximum term, N.A. argues that his precommitment credits should be subtracted from August 31, 2031 (the day before his 25th birthday) to yield a new maximum term of October 24, 2029. The People counter that the maximum term of confinement is not a date but a length of time governed by statute. That term therefore remains the same regardless of the amount of custody credits accrued or applied. We agree with the People.

A juvenile ward's maximum term of confinement "represent[s] the longest term of confinement in a facility that the ward may serve." (§ 875, subd. (c)(1)(B).) It therefore limits the length of time that a ward may remain in custody after the completion of the baseline term if the juvenile court finds that "the ward constitutes a substantial risk of imminent harm to others in the community if released from custody." (*Id.*, subd. (e)(3)) "The maximum term of confinement shall not exceed the middle term of imprisonment that can be imposed upon an adult convicted of the same offense or offenses." (*Id.*, subd. (c)(1)(B).) For purposes of section 875, " 'maximum term of confinement' has the same meaning as 'maximum term of imprisonment' " under section 726, subdivision (d)(2).[5] (§ 875, subd. (c)(2).)

Section 875, subdivision (c)(1)(C), provides that "[p]recommitment credits for time served must be applied against the maximum term of confinement." According to N.A., this means that a juvenile ward must be

---

[5] Section 726, subdivision (d)(2) states that " 'maximum term of imprisonment' means the middle of the three time periods set forth in [section 1170, subdivision (a)(3)], but without the need to follow the provisions of [section 1170, subdivision (b)] or to consider time for good behavior or participation . . . , plus enhancements which must be proven if pled."

released if his precommitment custody credits exceed his maximum term. (*In re Ernesto L.* (2022) 81 Cal.App.5th 31, 43.) We agree. But this does not mean that a ward's precommitment credits should be applied to modify the *end date* of the maximum term. The maximum term is not a date; it is a *length of time.* (See §§ 726, subd. (d)(2) & 875, subd. (c)(1)(B).) And once the juvenile court sets the length of the maximum term, precommitment credits are applied towards *reaching it.* (See § 875, subd. (c)(1)(C).) Thus, the fact that the court used the date when N.A. reached 25 years of age to calculate his maximum term makes no difference. The length of that term remains 8 years 3 months and 17 days, regardless of the number of precommitment custody credits that N.A. has accrued.

Because we conclude that the length of N.A.'s maximum term of confinement is not changed by his precommitment credits, we also reject N.A.'s argument that his seven-year baseline term should be reduced because it "improperly extends beyond his maximum term of confinement."

C. <u>Reconsideration of N.A.'s Baseline Term</u>

As mandated by section 875, subdivision (b), on July 1, 2023, the Judicial Council adopted a "matrix of offense-based classifications" which juvenile courts are now required to use in setting the baseline confinement term. (§ 875, subd. (h)(2); rule 5.806(d).) Pursuant to this matrix, the baseline term for N.A. ranges from four to seven years. (Rule 5.806(d).) And in determining the appropriate baseline term within that range, the juvenile court must consider a non-exhaustive list of criteria "based on the individual facts and circumstances of the case." (Rule 5.806(b).)

Here, the juvenile court set N.A.'s baseline term at seven years in May

9

2023.[6] The parties agree that rule 5.806 is an ameliorative change that should be applied retroactively in this case and that the court may further reduce N.A.'s baseline term under that rule. We agree and accordingly remand.

N.A. further contends that his baseline term "should be reduced to give credit for the time [he spent] in the secure track program from May 15, 2023 through August 29, 2024." The juvenile court may recalculate the credits that N.A. should receive for the time he has spent in Secure Track but we note that, like the application of precommitment credits to N.A.'s maximum term of confinement, those credits do not change the length of N.A.'s baseline term.

D. Deadly Weapon Allegation

At the April 2023 hearing, N.A. admitted as true the special allegation that he used a deadly weapon in the commission of second degree murder. Counsel stipulated to the factual basis for the admission, and the juvenile court accepted the allegation as true. Despite this, the minute orders and disposition reports repeatedly state that this special allegation was dismissed "on motion of DA." The People argue that these statements, if erroneous, may be corrected on remand. We agree.

N.A. counters that the People failed to demonstrate any error and that the juvenile court's orders are presumed correct. However, this ignores the well-established rule that "[w]here there is a discrepancy between the oral pronouncement of judgment and the minute order or the abstract of

_____

[6] According to the postjudgment evidence submitted by N.A., the juvenile court has reduced his baseline term to six years three months as of August 29, 2024. This reduction has no bearing on our decision to remand for reconsideration of the baseline term under rule 5.806.

10

judgment, the oral pronouncement controls." (*People v. Zackery* (2007) 147 Cal.App.4th 380, 385.) "Courts may correct clerical errors at any time, and appellate courts . . . that have properly assumed jurisdiction [can] order[] correction of abstracts of judgment that [do] not accurately reflect the oral judgments of sentencing courts." (*People v. Mitchell* (2001) 26 Cal.4th 181, 185.) Accordingly, we will order the juvenile court on remand to clarify whether this special allegation was in fact dismissed. If it was not, the court should correct its minute orders and direct the probation department to do the same in its dispositional reports to reflect that N.A. admitted to the use of a deadly weapon. (Pen. Code, § 12022, subd. (b)(1).)

E. Adequacy of IRP

N.A. argues that the juvenile court failed to conduct a "formal" IRP review hearing and failed to timely approve an adequate IRP within 30 days of the order of commitment. (§ 875, subd. (d)(1).) He requests that we "direct the juvenile court to conduct a comprehensive IRP review hearing" and "approve an IRP as required by section 875, subdivision (d) and rule 5.804(d)." To the extent that N.A. is asking this court to review orders issued *after* he filed his second notice of appeal,[7] we lack the jurisdiction to do so. And to the extent that N.A. is asking this court to consider the postjudgment evidence added to the record pursuant to his unopposed motion for the

---

[7] N.A. filed three unopposed motions to augment the record which this court granted. The motions, however, neglected to specify that they encompassed *postjudgment* evidence or what exceptional circumstances justified our consideration of that evidence. (*In re Zeth S.* (2003) 31 Cal.4th 396, 405 [absent exceptional circumstances, appellate court should not consider postjudgment evidence].) We requested and received supplemental briefing from the parties on the extent to which we can consider such postjudgment evidence and whether we have jurisdiction to review any postjudgment orders entered after September 15, 2023.

purpose of reversing the orders that he did appeal from, we cannot do so. But we may consider that evidence for the purpose of determining whether N.A.'s appeal on this issue is moot, and we find that the postjudgment evidence does render that appeal moot.

1. *Procedural History*

At the May 15, 2023 disposition hearing, the juvenile court placed N.A. in Secure Track. In doing so, the court noted that once it received the IRP, it would "determine whether [his] rehabilitative goals and needs can be best met in a secure youth treatment facility or with an extensive therapeutic program." On May 22, 2023, Dr. Taxy submitted his psychological evaluation of N.A. In his report, Dr. Taxi diagnosed N.A. with "Major Depressive Disorder" as well as "Other Specified Obsessive-Compulsive and Related Disorder." He recommended a variety of mental health services, including weekly "individual therapy sessions with a clinician oriented in dialectical behavioral therapy (DBT) or trauma informed cognitive behavioral therapy (CBT)" as well as "at least six months of EMDR [Eye Movement Desensitization and Reprocessing] . . . to address the recent traumas, interpersonal losses and conflicts."

On June 8, 2023, the probation department submitted its recommended IRP. Although Dr. Taxy submitted his report over two weeks earlier, the department's IRP did not reference or incorporate Dr. Taxy's recommendations. The department later admitted that it had not even looked at Dr. Taxy's report in preparing the IRP.

On June 16, 2023, the juvenile court held a hearing but did not take any action with respect to the IRP even though it purportedly "read and

considered the report(s) from the Probation Department."[8]  Instead, the court scheduled a section 779.5 hearing at defense counsel's request.  In his section 779.5 motion, N.A. asked the court "to set aside" his commitment to Secure Track and to place him "in a therapeutic residential out of home placement."  According to the motion, N.A. could not receive "appropriate therapy and programs" in Secure Track.

At the hearing on N.A.'s section 779.5 motion, Dr. Taxy testified that he recommended individual therapy for N.A. "at least twice a week," coupled with DBT.  The probation officer testified that she did not review Dr. Taxy's evaluation in preparing the IRP but that she had since "briefly perused it."  The court denied the section 779.5 motion on September 15, 2023 but ordered N.A. "stepped down to" a less restrictive placement.

At the October 30, 2023 detention hearing (after N.A. was ordered "detained in secure custody"), defense counsel requested a formal IRP review hearing and highlighted that the juvenile court was required to approve an IRP within 30 days of commitment but had yet to do so.  The court responded, "*I don't think we need to, for my purposes*.  I think we did have a hearing on that.  But we do have a progress report set on November 14th.  You can always bring it up, and the Court, as you said, can always modify it."  (Italics added.)

At the November 14, 2023 progress review hearing, a social worker who had been working with N.A. commented that "it's really clear that the reason this didn't work is entirely related to mental health needs, not any other reason about not wanting to participate and not wanting to get better."

---

[8] The minute order did not, however, state that the juvenile court had read or considered Dr. Taxy's report, suggesting that the court had not done so.

13

She urged the juvenile court to adopt Dr. Taxy's recommendations and requested that EMDR, CBT, and DBT treatments be administered to N.A. by certified clinicians. Both parties agreed that the IRP should incorporate the services recommended by Dr. Taxy, and the court ordered that the probation department "comply with the IRP, which incorporates Dr. Taxy's report and testimony." At the subsequent February 29, 2024 and August 29, 2024 review hearings, the court received favorable reports regarding N.A.'s progress.

2. *Consideration of Postjudgment Orders and Evidence*

N.A. filed timely notices of appeal from the juvenile court's May 15, 2023 disposition order and the September 15, 2023 order denying his section 779.5 motion. He argues that we should treat his first notice of appeal as a premature appeal of the court's "June 16, 2023 IRP review hearing orders." The court did not approve an IRP on that date so N.A. presumably appeals from the court's failure to timely do so within 30 days of its May 15, 2023 commitment order. (§ 875, subd. (d)(1).) N.A. then argues that, because the court "has a continuing duty to monitor the rehabilitation of wards committed to" Secure Track, it would create "an enormous burden" if counsel "were required to file a separate notice of appeal after the 30-day review and each six-month review." He therefore proposes that we "roll[] those post-judgment orders into an already pending appeal[, i.e., the appeal from the September 15, 2023 order,] with the addition to the record of the subsequent orders." But in his supplemental brief, N.A. appears to backpedal from this position, stating that he "has not directly challenged the correctness of any of the juvenile court's orders issued after September 15, 2023." Instead, he only contends that we may consider the postjudgment orders and any other postjudgment evidence in deciding this appeal—presumably to overturn the

14

orders that he did appeal from.

Although N.A's position on the postjudgment orders and evidence is less than clear, the law is not.  We lack jurisdiction to review any orders issued after the orders that N.A. appealed, and we may, as a general rule, only consider postjudgment evidence to affirm an appealed-from order as moot.  Applying these well-established principles of appellate review, we find that the juvenile court's post-September 2023 orders moot N.A.'s challenges to the adequacy of the hearings held or IRPs, if any, ordered in May, June, or September 2023.

Section 800 states in relevant part that "[a] judgment in a proceeding under Section 601 or 602 may be appealed from, by the minor, in the same manner as any final judgment, and *any subsequent order* may be appealed from, by the minor, as from an order after judgment."  (§ 800, subd. (a), italics added.)  "A timely notice of appeal, as a general matter, is 'essential to appellate jurisdiction.' "  (*People v. Mendez* (1999) 19 Cal.4th 1084, 1094.)  Indeed, "[a]n appeal reviews the correctness of a judgment *as of the time of its rendition*, upon a record of matters which were before the trial court for its consideration."  (*In re Heather B.* (2002) 98 Cal.App.4th 11, 13, italics added.)

There is no "blanket exception" to this general rule for juvenile appeals (*In re Zeth S., supra* 31 Cal.4th at p. 405), even though these appeals "raise unique mootness concerns because the parties have multiple opportunities to appeal orders even as the proceedings in the juvenile court proceed" (*In re N.S.* (2016) 245 Cal.App.4th 53, 59).  Accordingly, our Supreme Court has cautioned against "the liberal use of [postjudgment] evidence to *reverse* juvenile court judgments and remand cases for new hearings," as that "would violate [] the generally applicable rules of appellate procedure."  (*In re Zeth S.*, at p. 413, italics added.)  Courts, however, *may* consider

15

postjudgment evidence for the limited purpose of establishing that an appeal is moot. (*Reserve Insurance Co. v. Pisciotta* (1982) 30 Cal.3d 800, 813 ["courts have not hesitated to consider postjudgment events . . . when subsequent events have caused issues to become moot"].)

N.A. no longer appears to challenge "the correctness of" the juvenile court's post-September 15, 2023 orders. But even if N.A. had not retracted his apparent request for review of those orders, we lack the jurisdiction to review them. (See *In re Zeth S.*, *supra*, 31 Cal.4th at p. 405.) And to the extent that N.A. requests that we rely on postjudgment evidence (after the September 15, 2023 minute order) to reverse the orders that he did appeal from, we also cannot do so.[9] (*Id.* at p. 413.)

But we may consider postjudgment evidence to determine whether an issue on appeal is now moot. Upon doing so, we conclude that N.A.'s challenge to the juvenile court's failure to hold a formal IRP hearing or order an adequate IRP in its May, June, or September 2023 orders is moot. While N.A. may have raised a meritorious challenge to those orders, the court modified the IRP following a hearing on November 14, 2023 to incorporate Dr. Taxy's recommendations, including "DBT, CBT, and EMDR services, mental health services, and therapy . . . along with anger management" as well as two hours of therapy a week. As a result, N.A. now has an IRP that

---

[9] In his supplemental brief, N.A. argues that we may consider the postjudgment evidence "to *refute* claims or inferences of mootness." (Italics added.) But we do not understand this argument. An order may only be rendered moot by events that occur *after* the issuance of that order. Because there was no postjudgment evidence for us to consider before N.A. asked us to augment the record with that evidence, it is not clear what claim or inference of mootness that N.A. sought to refute with this evidence. Indeed, there would have been no basis for a finding of mootness without the postjudgment evidence that N.A. added to the record.

presumably meets the requirements of section 875, subdivision (d)(2). Indeed, N.A. has, in effect, conceded this because he no longer challenges the "correctness" of the orders implementing these modifications to his IRP.

Despite this, N.A. argues in his supplemental letter brief that we should order the juvenile court to hold "a formal hearing on the IRP" so he can get a "comprehensive" IRP. To the extent that N.A. is dissatisfied with his current IRP, he should have appealed from the postjudgment orders implementing that IRP. In any event, N.A. does not adequately explain why a new hearing is necessary. For example, he does not explain why the hearings conducted by the court after September 2023 were inadequate. Nor does he explain what difference a formal IRP review hearing would make at this point, as the court has already incorporated Dr. Taxy's recommendations into N.A.'s IRP and ordered that probation comply with it. In fact, N.A. identifies *no* deficiencies in the IRP ordered by the court in November 2023. Thus, his challenges to the adequacy of the hearings and IRPs ordered in May, June, or September 2023 are now moot.

Nonetheless, we are troubled by the juvenile court's significant delay in ordering the recommended mental health services for N.A. By statute, the court had to review and approve an IRP *within 30 days* of its commitment order on May 15, 2023. (§ 875, subd. (d)(1).) Despite this statutory requirement, the court did not do so. Even more troubling, neither the court nor the probation department considered the services recommended by Dr. Taxy even though Dr. Taxy submitted his recommendations *more than three weeks before* the June 16, 2023 hearing on the IRP. As a result, the court did not order the services recommended by Dr. Taxy until *roughly five months after* that hearing. As noted by the social worker at the November 14, 2023 hearing, N.A. could not and did not make any progress in dealing

17

with his mental health issues until he received the services recommended by Dr. Taxy.

There appears to be no good reason for the five-month delay in ordering the mental health services recommended by Dr. Taxy. As Dr. Taxy explained in his report to the juvenile court almost six months before the court finally ordered the recommended services, N.A. suffered from "pervasive and severe depressive symptoms, emotion dysregulation, and perseverative, compulsive thought tendencies" which were "likely compounded by the [incident] . . . and the subsequent loss of his support system." Moreover, despite the seriousness of N.A.'s crimes, Dr. Taxy described him as an intelligent and cooperative youth with a limited history of violence other than the subject incident. Clearly, N.A. was in dire need of and would have greatly benefited from the services recommended by Dr. Taxy at the time of the original IRP hearing in June 2023. Yet, the court inexplicably waited another five months to order those services. In doing so, the court undermined the purpose behind juvenile justice realignment—i.e., to promote youth rehabilitation and community safety. (§875, subd. (a)(3)(D).) Fortunately, it appears that N.A. is progressing well now that he is receiving the services that he needs. But the court would be well-advised in the future to ensure that juvenile wards receive the mental health services they need as soon as practicably possible.

## III. DISPOSITION

The judgment is reversed and remanded for the recalculation of N.A.'s custody credits, including precommitment credits to be applied to his maximum term of confinement, and consideration of N.A.'s baseline term under rule 5.806. The juvenile court is also ordered to clarify whether the special allegation for use of a deadly weapon was dismissed. If it was not, the court should correct its minute orders to reflect that N.A. admitted the

18

special allegation for use of a deadly weapon and to direct the probation department to do the same in its dispositional reports.  In all other respects, the judgment is affirmed.


CHOU, J.


We concur.

JACKSON, P. J.
SIMONS, J.


(A168097 / A169061)

19